United States District Court
Southern District of Texas
**ENTERED**
August 23, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

|  |  |  |
|---|---|---|
| NEFTALI NUNEZ, | § | |
| Petitioner | § | |
| | § | |
| v. | § | Civil Action No. 1:21-cv-131 |
| | § | |
| BOBBY LUMPKIN, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Neftali Nunez's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (hereinafter, Nunez's "Petition"), and his "Memorandum of Law in Support of Habeas Corpus Application" (hereinafter, "Memorandum in Support"). Dkt. Nos. 1 and 11. Respondent Bobby Lumpkin has filed a Motion for Summary Judgment with Brief in Support (hereinafter, Lumpkin's "Motion" or "Motion for Summary Judgment"). Dkt. No. 16. For the reasons provided below, it is recommended that the Court: (1) **GRANT** Lumpkin's Motion; (2) **DIRECT** the Clerk of Court to close this case; and (3) **DECLINE** to issue a certificate of appealability.

## I. Jurisdiction

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 2241 and § 2254, which provide that jurisdiction is proper where the inmate is confined, or where his state conviction was obtained. *See* 28 U.S.C. § 124(b)(5); *Wadsworth v. Johnson*, 235 F.3d 959, 961-62 (5th Cir. 2000).

## II.  Procedural History and Background

On November 17, 2017, in the 357th Judicial District Court of Cameron County, Texas, a jury convicted Nunez of "aggravated sexual assault of a child" and "indecency with a child by sexual contact."  Dkt. No. 14-35 at 5-6 (containing the judgment in *The State of Texas v. Neftaly Nunez, a/k/a Neftali Nunez Gonzalez a/k/a Neftali Nunez*, Case No. 2017-DCR-01275-E).  The jury additionally found that Nunez should serve a sixty-year term of imprisonment for the aggravated sexual assault of a child conviction (hereinafter, the "count 1" or "sexual assault" conviction), and a concurrent twenty-year term of imprisonment for the indecency with a child by sexual contact conviction (hereinafter, the "count 2" or "indecency" conviction.  *Id.*  The 357th Judicial District Court (hereinafter, the "trial court") entered its Judgment of Conviction on that same 17th day of November, 2017.  The Thirteenth Court of Appeals affirmed Nunez's judgment of conviction on April 25, 2019.  Dkt. No. 14-13 at 34; *Nunez v. State*, No. 13-17-00671-CR, 2019 WL 1831715, at *16 (Tex. App. Apr. 25, 2019, pet. ref'd) (mem. op., not designated for publication).  The Texas Court of Criminal Appeals (hereinafter, the "TCCA") refused Nunez's petition for discretionary review on August 21, 2019.  Dkt. No. 14-23 at 1; Dkt. No. 1 at 3.

In affirming his conviction, the Thirteenth Court of Appeals summarized the background facts of Nunez's case as follows:

> S.L., the child complainant in count one, testified that Nunez is a friend of her mom's friend, S.C.  According to S.L., S.C. and Nunez spent a lot of time with S.L.'s family, including on the date of the alleged incident, January 9, 2013.  S.L. asserted that Nunez was asked to get soda for a party and that she and Nunez left together to acquire soda.  S.L. claims that Nunez took her to a remote area and sexually assaulted her before returning to the party.  S.L. also admitted that she did not like Nunez because she witnessed him grabbing S.C.'s throat and pushing her.

A.G., the child complainant in count two, is the daughter of S.C. According to A.G., Nunez touched her breast and "private part" two times when she was about seven or eight years old and lived in an apartment. She testified that Nunez additionally touched her breast and "private part," both over and under the clothes, twice while she was at her grandmother's house. She further testified that Nunez touched her breast and penetrated her "private part" with his finger three times while living in a trailer.

Sonja Edelman, a forensic nursing expert for the State, testified regarding female physiology, sexual assault, and her experience conducting interviews of sexual assault complainants. Detective Sam Lucio, a police detective for the City of Brownsville, the lead investigator in the case, testified about his investigations in this case. After the State rested, Nunez's wife, Joanna Nunez, testified that she married Nunez in 2010. According to her, she "ended the marriage because he cheated on me with [S.C.], the victim's mother." Joanna claimed that S.C. has had contact with Nunez in the last year.

Nunez took the stand and denied touching either of the child complainants. He asserted that the grandmother's house was so small, he never would have been alone with the children long enough to have to commit the alleged offenses.

Dkt. No. 14-13 at 2-3; *Nunez v. State*, No. 13-17-00671-CR, 2019 WL 1831715, at *1 (footnotes omitted, formatting altered).[1]

Nunez filed an application for a state writ of habeas corpus on or about June 29, 2020. Dkt. No. 14-35 at 24.[2] On May 25, 2021, the state habeas court, which was also

---

[1] S.L. specifically testified that on January 9, 2013, when she was ten years old, Nunez drove her to a remote location and raped her. *See* Dkt. No. 14-3 at 28, 36, 41-47; Dkt. No. 14-35 at 5 (noting that S.L. was ten years old at the time). A.G. specifically testified that, when Nunez lived with her and her mother, he repeatedly touched her breasts and vagina, and also inserted his finger into her vagina approximately three times. *Id.* at 173-185. She was seven and/or eight years old when this occurred. *Id.* at 177; Dkt. No. 14-35 at 5 (noting that A.G. was eight years old at the time).

[2] In general, pleadings from pro se state habeas prisoners are deemed filed on the day they are placed in the prison mailing system. *See Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013) ("[U]under Texas law the pleadings of *pro se* inmates, including petitions for state post-conviction relief, are deemed filed at the time they are delivered to prison authorities, not at the time they are stamped by the clerk of the court."). Nunez signed his application for a state writ of habeas corpus on June 29, 2020, but does not clearly indicate when he placed it in the prison mailing system. Dkt. No. 14-35 at 24, 28.

Nunez's trial court, found that Nunez's habeas application lacked merit in its "Findings of Fact, Conclusions of Law, and Order" (hereinafter, "Habeas Order"). Dkt. No. 14-34 at 14-19. The TCCA then denied his application without a written order on July 28, 2021. Dkt. No. 14-24 at 1 (denying Nunez's application "without written order on findings of trial court without hearing and on the court's independent review of the record").

Nunez filed his instant Petition on August 24, 2021. Dkt. No. 1.[3] He subsequently filed his Memorandum in Support on September 8, 2021. Dkt. No. 11 at 21. Nunez's Petition and Memorandum in Support list numerous grounds for relief including claims of trial court error, ineffective assistance of counsel, and prosecutorial misconduct. Dkt. No. 1 at 6-7; Dkt. No. 11 at 1-20. Lumpkin filed his Motion for Summary Judgment on November 2, 2021. Dkt. No. 16. His Motion asserts that all of Nunez's claims should be denied because they lack merit, and that a certificate of appealability should not issue. *Id.* at 1, 24. Nunez filed a "Response" to Lumpkin's Motion for Summary Judgment on or about December 8, 2021. Dkt. No. 20. Lumpkin has not filed a reply.

### III. Nunez's Claims

As noted above, Nunez's Petition and Memorandum in Support assert claims of trial court error, ineffective assistance of counsel, and prosecutorial misconduct. Dkt. No. 1 at 6-7; Dkt. No. 11 at 1-20. More specifically, he presents the following claims in the following categories:

---

[3] Nunez certifies that he placed his Petition in the prison mailing system on August 24, 2021. Dkt. No. 1 at 10. The Court will consider his Petition filed on that date. *See Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (discussing the mailbox rule and noting that, for statute of limitations purposes, a pro se prisoner's petition is filed on the day it is placed in the prison mailing system).

**A.    Prosecutorial   Misconduct   Claims**.    The   prosecution improperly:

(1)    told the jury that S.L. was so traumatized by his alleged abuse that she had Post-Traumatic Stress Disorder ("PTSD") and was suicidal, even though there was no evidence in the record to support these claims;

(2)    vouched for the veracity of the complainants multiple times;

(3)    told the jury, without foundation, that he was a pedophile, a predator, a liar, and "not like the rest of us[;]"

(4)    asked the jury to "send a message" to Cameron County and the State of Texas that pedophiles are not tolerated;

(5)    told the jury that he had not shown remorse.  Dkt. No. 1 at 6; Dkt. No. 11 at 2, 13, 15-16.

**B.    Confrontation Clause Violation Claim**.  The trial court violated his Confrontation Clause rights.  The trial court did this when it allowed Officer Sam Lucio to testify about what S.L's mother told him, about what a "Tropical Texas" representative told her.[4]  Officer Lucio's testimony contained third-party hearsay because S.L's mother did not testify, nor did the Tropical Texas representative. Dkt. No. 1 at 7; Dkt. No. 11 at 2-4, 6-7, 16-19.

**C.    Biased Juror Claim**.  The trial court improperly allowed a biased juror to serve on the jury.  During jury selection, venire member 56 stated that A.G. had been one of her students and that she knew some of the witnesses as well.  When asked if her knowledge of these individuals would impair her ability to be fair and impartial, this venire member said that she could not be 100 percent certain that she could be fair, though she would try her best.  Venire member 56 was never rehabilitated and ultimately became juror number 12. Dkt. No. 1 at 7; Dkt. No. 11 at 7-8, 19-20.

---

[4] Nunez's reference to "Tropical Texas" here is a reference to Tropical Texas Behavioral Health, an organization that provides a wide array of behavioral health services for adults and children. *See* https://www.ttbh.org/about-tropical-texas-behavioral-health (last visited on August 19, 2022).  Nunez states that Officer Lucio testified that S.L.'s mother told him, that Tropical Texas told her, that "Petitioner was 'the one that abused [her] daughter.'"  Dkt. No. 11 at 6 (brackets in original).

**D.** **Ineffective Assistance of Counsel Claims**.  His trial counsel provided ineffective assistance by:

(1)  failing to object to the above-referenced instances of prosecutorial misconduct;

(2)  failing to object when his Confrontation Clause rights were violated;

(3)  failing to strike a biased juror;

(4)  failing to seek a new jury pool when a venire member made comments during voir dire that biased the whole pool against him;

(5)  introducing inadmissible extraneous offense evidence against him;

(6)  failing to present any mitigating evidence at the punishment phase of the trial;

(7)  failing to require the trial court to make an outcry witness designation.  Dkt. No. 1 at 6; Dkt. No. 11 at 2, 4-20.

## IV.  Governing Law

**A.  28 U.S.C. § 2254**.  The applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA")[5] govern petitions brought under 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 335-336 (1997).  Pursuant to the AEDPA, a federal court may not grant habeas relief based upon a claim that was adjudicated on the merits by a state court unless the petitioner demonstrates that the state court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an

---

[5]  Pub. L. No. 104-132, 110 Stat. 1214 (1996).

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *See also Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (same). "This standard is difficult to meet but 'stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.'" *Auvenshine v. Davis*, No. 4:17-CV-294-Y, 2018 WL 2064704, at \*2 (N.D. Tex., May 3, 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 102).

With respect to questions of fact, the state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to questions of law, or mixed questions of law and fact adjudicated on the merits in state court, the petitioner must either demonstrate that the state court decision "was contrary to" clearly established Supreme Court precedent, or "involved an unreasonable application of" that precedent. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Pursuant to the "contrary to" clause, district courts may only grant habeas relief if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'" *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Pursuant to the "unreasonable application" clause, district courts may only grant relief: (1) when a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case[,]" or (2) when the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

**B.  FED. R. CIV. P. 56**.  The standard applied when ruling on a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure.  FED. R. CIV. P. 56(a).  In pertinent part, Rule 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*, *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same).  Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases."  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).  District courts considering motions for summary judgment in ordinary civil cases are required to construe the facts in the case in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255.  Nevertheless, Rule 56's application in the federal habeas context differs from its application in "the average civil case."  *Torres v. Thaler*, 395 F. App'x 101, 106 (5th Cir. 2010) (unpublished) (citing *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004)).  As the Fifth Circuit has explained:

> the rule applies only to the extent that it does not conflict with the habeas rules.  Therefore, § 2254(e)(1)-which mandates that findings of fact made by a state court are "presumed to be correct"— overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.

*Smith v. Cockrell*, 311 F.3d 661, 668.

**C. Prosecutorial Misconduct**.  When reviewing a prosecutorial misconduct claim filed by a state habeas petitioner, a federal court may not impose the same standard of review upon state prosecutors as the standard applied "to federal prosecutors in cases on direct appeal." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985) (per curiam); *Ries v. Quarterman*, 522 F.3d 517, 530 (5th Cir. 2008) (same); *Tolar v. Dir.*, TDCJ-CID, No. 9:17-CV-8, 2019 WL 11624602, at *5 (E.D. Tex. Dec. 3, 2019), *report and recommendation adopted*, No. 9:17-CV-8, 2021 WL 53686 (E.D. Tex. Jan. 6, 2021) (same).  The standard of review is "'the narrow one of due process, and not the broad exercise of supervisory power.'"  *Darden v. Wainwright*, 477 U.S. 168, 181, (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  Thus, prosecutorial misconduct is actionable only when it violates the petitioner's right to due process.  *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992).

Prosecutorial misconduct may violate due process by abridging "a specific right conferred by the Bill of Rights," such as the right to remain silent.  *Foy v. Donnelly*, 959 F.2d 1307, 1316 (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)).  Alternatively, it may violate due process "generally," thus constituting a "'generic substantive due process' violation."  *Id.*  When a petitioner asserts a generic due process violation, courts follow a two-step process.  *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002).  First, the court determines whether the prosecution's conduct was improper.  Second, if the conduct was improper, the court determines whether the conduct prejudiced the defendant's substantive rights.  *Id.*  Prosecutorial misconduct prejudices a defendant's substantive rights if it renders the defendant's trial fundamentally unfair within the meaning of the Fourteenth Amendment.  *Darden v. Wainwright*, 477 U.S. 168, 181; *Donnelly v. DeChristoforo*, 416 U.S. 637, 643.

"A trial is fundamentally unfair if there is a reasonable probability that the verdict *might have been different* had the trial been properly conducted." *Foy*, 959 F.2d 1307, 1317 (internal quotation marks omitted, emphasis added); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (same). Despite the apparent generosity of this standard, when petitioners argue that the prosecutorial misconduct consisted of improper comments or argument, the Fifth Circuit imposes a tougher burden. In those instances, a prosecutor's improper remarks "must either be so persistent and pronounced, or the evidence so insubstantial that, but for the remarks, no conviction would have occurred." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281; *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986) (same); *Turner v. Johnson*, 106 F.3d 1178, 1188 (5th Cir. 1997) (same); *Harris v. Cockrell*, 313 F.3d 238, 245 (5th Cir. 2002) (same). *See also Woodfox v. Cain*, 609 F.3d 774, 806 (5th Cir. 2010) ("Improper prosecutorial remarks are constitutionally unfair only if they are persistent and pronounced, or if the evidence is so weak that no conviction would have occurred but for the remarks.") (citing *Hughes v. Quarterman*, 530 F.3d 336, 347 (5th Cir. 2008)); *Williams v. Davis*, 192 F. Supp. 3d 732, 751 (S.D. Tex. 2016) ("A trial is fundamentally unfair when the prosecutor engages in persistent or pronounced misconduct, or the evidence was so insubstantial that in all probability but for the remarks the jury would not have returned a guilty verdict.") (citations omitted).

A prosecutor's comments "are not considered in isolation, but are evaluated in the context of the entire trial as a whole, including the prosecutor's entire closing argument." *Kirkpatrick*, 777 F.2d 272, 281 (citation omitted). A prosecutor's misconduct by itself will only exceed constitutional limitations in "'the most egregious cases.'" *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987) (quoting *Menzies v. Procunier*, 743 F.2d 281, 288−89 (5th Cir. 1984)); *Cadriel v. Lumpkin*, No. 1:18-CV-080, 2021 WL 7159870, at *7 (S.D. Tex.

Aug. 30, 2021), *report and recommendation adopted*, No. 1:18-CV-00080, 2022 WL 523996 (S.D. Tex. Feb. 22, 2022) (same).

    **D.  Ineffective Assistance of Counsel.**  The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them.  *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)).  Critical stages include not only trial, but also pretrial proceedings — including the plea-bargaining process.  *Laffler v. Cooper*, 566 U.S. 156, 132 S.Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible.  *Laffler*, 132 S.Ct. 1376, 1385-1386.  The constitutional standard for determining whether a criminal defendant has been denied effective assistance of counsel at any of the critical stages mentioned above was announced by the Supreme Court in *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984).

    In order to demonstrate that their attorney's performance was constitutionally deficient, a convicted defendant must show that their counsel's representation "fell below an objective standard of reasonableness."  *See Williams v. Taylor*, 529 U.S. 362, 390-91; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621

(5th Cir. 1994); *Darden v. Wainwright*, 477 U.S. 168, 184; *Strickland v. Washington*, 466 U.S. at 687-88. A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel fell within a wide range of reasonable, professional assistance. *See Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1036 n.1 (5th Cir. 1998); *Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993); *Strickland*, 466 U.S. at 687-91.

In reviewing counsel's performance, the Court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and must "indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. *Id.* To establish prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams v. Taylor*, 529 U.S. 362, 391; *Strickland*, 466 U.S. at 694.

The prejudice prong of *Strickland* focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Williams*, 529 U.S. at 393 n. 17; See also *Strickland*, 466 U.S. at 692 (same).

Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or actual prejudice under that test will ordinarily make it unnecessary to examine the other prong. *See Strickland*, 466 U.S. at

700; *Ransom v. Johnson*, 126 F.3d at 716, 721 (5th Cir. 1997); *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994).   Thus, a failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders will render the issue of prejudice moot.   *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229-30 (5th Cir. 1987).   It is also generally unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice.   *See Black v. Collins*, 962 F.2d at 401; *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986).

**E.   The Confrontation Clause**.   The Confrontation Clause of the U.S. Constitution's Sixth Amendment states that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."   U.S. Const., amend. VI.   The Supreme Court held, in *Crawford v. Washington*, that the prosecution violates this right when it introduces "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."   541 U.S. 36, 53-54 (2004).   Only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause."   *Davis v. Washington*, 547 U.S. 813, 821 (2006).   "'[A] statement that is not testimonial cannot violate the Confrontation Clause.'"   *Brown v. Epps*, 686 F.3d 281, 286 (5th Cir. 2012) (quoting *United States v. Vasquez*, 234 Fed. Appx. 310, 313 (5th Cir. 2007) (per curiam) (unpublished)).

> The *Crawford* Court described a testimonial statement as "'[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact,'" a description which includes "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'". . . . The Court subsequently clarified that a statement is not testimonial if it is procured for the primary purpose of allowing police to assist in an ongoing emergency or

if it is procured under other circumstances where the primary purpose is not to create an out-of-court substitute for trial testimony.

*Id.* at 286–87 (citations omitted).  *See also Young v. Byrd*, No. 3:13-cv-500-TSL-JCG, 2015 WL 7738098, at *2 (S.D. Miss. Dec. 1, 2015) ("Since *Crawford*, the [Supreme] Court fleshed out the definition of 'testimonial,' adopting the 'primary purpose' test.  Under this test, a statement is testimonial if its 'primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution.'") (citations omitted).

In § 2254 proceedings, Confrontation Clause claims "are subject to harmless-error analysis."  *Atkins v. Hooper*, 979 F.3d 1035, 1045, 1049 (5th Cir. 2020).  Thus, in addition to making the required showing under § 2254(d), the petitioner must also satisfy the test announced by the Supreme Court in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *Id.* (citing *Horn v. Quarterman*, 508 F.3d 306, 322 n.24 (5th Cir. 2007)).  Specifically, the petitioner must show that the violation of his Confrontation Clause rights had a "substantial and injurious effect or influence in determining the jury's verdict."  *Id.* (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, and quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  *See also Brown v. Davenport*, No. 20-826, 2022 WL 1177498, at *3 (U.S. Apr. 21, 2022) ("When a state court has ruled on the merits of a state prisoner's claim, a federal court cannot grant relief without first applying both the test this Court outlined in *Brecht* and the one Congress prescribed in AEDPA."); *Williams v. Superintendent SCI Green*, No. 3:20-CV-908, 2022 WL 1321128, at *5 (M.D. Pa. May 3, 2022) ("In addition to satisfying either prong of § 2254, a petitioner must also satisfy the test announced by the Supreme Court in *Brecht v. Abrahamson*[.] . . . To satisfy *Brecht*, a state prisoner must demonstrate that the trial error 'had substantial or injurious effect or influence in determining the jury's verdict.'") (quoting *Brecht*, 507 U.S. 619, 637, and

citing *Brown v. Davenport*, No. 20-826, 2022 WL 1177498, at *3, 9).

**F.   The Sixth Amendment Right to an Impartial Jury**.   The Sixth Amendment to the U.S. Constitution provides that a criminal defendant has the right to an impartial, unbiased jury.  U.S. Const., amend. VI; *Buckener v. Davis*, 945 F.3d 906, 910 (5th Cir. 2019); *Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006).  A biased juror is a juror whose "'views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"  *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)); *Hatten v. Quarterman*, 570 F.3d 595, 600 (5th Cir. 2009) (same).  Bias may be either implied or actual.  To show actual bias, a petitioner must present "admission or factual proof" of bias. *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001).  Implied bias, on the other hand, is present only in "'extreme situations'" such as "'a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.'"  *Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003) (quoting *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring)).

Generally, federal courts must initially presume that a defendant's jury was impartial.  *United States v. O'Keefe*, 722 F.2d 1175, 1179 (5th Cir. 1983); *United States v. Ruggerio*, 56 F.3d 647, 652 (5th Cir. 1995); *United States v. Davis*, 393 F.3d 540, 549 (5th Cir. 2004); *United States v. Hemphill*, 642 F. App'x 448, 454 (5th Cir. 2016); *Durden v. Dir., TDCJ-CID*, No. 9:18CV124, 2021 WL 4169780, at *3 (E.D. Tex. Aug. 4, 2021), *report and recommendation adopted*, No. 9:18CV124, 2021 WL 4148974 (E.D. Tex. Sept. 13, 2021).  If implied bias is present, however, bias is presumed as a matter of law. *See*

*Solis v. Cockrell*, 342 F.3d 392, 395 ("The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law.") (citing *United States v. Wood*, 299 U.S. 123, 134 (1936)).  Once bias is presumed, the remedy is a new trial.  *Id*.  This is because the seating of impliedly biased juror constitutes a structural error, rather than a mere trial error,[6] and as such it is not subject to a harmless error analysis.

> The remedy for a valid implied bias claim is a new trial. *See Dyer v. Calderon*, 151 F.3d 970, 973 n. 2 (9th Cir. 1998) ("The presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice.  Like a judge who is biased, the presence of a biased juror introduces a structural defect not subject to harmless error analysis." (citations omitted)); *Johnson v. Armontrout*, 961 F.2d 748, 756 (8th Cir. 1992) ("The presence of a biased jury is no less a fundamental structural defect than the presence of a biased judge. We find this claim outside the gamut of harmless error analysis." (citation omitted)). *But see Fitzgerald v. Greene*, 150 F.3d 357, 365 (4th Cir. 1998) (subjecting juror bias claims to harmless error analysis). As Justice O'Connor suggested in *Smith*, such an extreme remedy should be reserved only for "extreme situations" not amenable to actual bias analysis.

*Id*. at 399-400, n. 44.  *See also Gray v. Mississippi,* 481 U.S. 648, 668 (1987) ("We have recognized that 'some constitutional rights [are] so basic to a fair trial that their infraction can never be treated as harmless error.'. . . The right to an impartial adjudicator, be it judge or jury, is such a right.") (quoting *Chapman v. California*, 386 U.S. 18, 23, n. 8 (1967)); *Virgil v. Dretke*, 446 F.3d 598, 607 ("[Ce]rtain errors in the trial process are 'so basic to a fair trial' as to defy harmless error review.  It is clearly established that the Supreme Court views the denial of the right to an impartial decisionmaker to be such an

---

[6]  A "trial error" is an error that may 'be quantitatively assessed in the context of other evidence presented,' and is subject to harmless-error analysis." *Arizona v. Fulminante*, 499 U.S. 279, 307-308 (1991).  Relief for a trial error is dependent or "tied in some way" to its "prejudicial effect." *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004). By contrast, a  "structural" error or defect is something that "affects the framework within which the trial proceeds, rather than simply an error in the trial process itself[;]" and, thus, "defies analysis by harmless-error standards." *Fulminante*, 499 U.S. at 309–10 (citations omitted).

error that taints any resulting conviction with constitutional infirmity.") (citations omitted); *Blankenburg v. Miller*, No. 1:16-CV-505, 2019 WL 140105, at *6 (S.D. Ohio Jan. 9, 2019), *supplemented*, No. 1:16-CV-505, 2019 WL 3535052 (S.D. Ohio Aug. 2, 2019) ("Petitioner is correct that if he proves the trial jury included a juror who was actually biased against him, he has shown a structural constitutional error, i.e., one not subject to harmless error analysis.") (citing *Arizona v. Fulminante*, 499 U.S. 279, 307-310 (1991) and *Hughes v. United States*, 258 F.3d 453, 463 (6th Cir. 2001)). *But s*ee *Canfield v. Lumpkin*, 998 F.3d 242, 249 (5th Cir. 2021) (assuming "for the sake of argument," that the seating of a "biased juror does pose a structural error," but suggesting that the matter is unsettled); *Austin v. Davis*, 876 F.3d 757, 803 (5th Cir. 2017) (Owen, J., concurring) (suggesting that the matter is unsettled because the Supreme Court has never held that "automatic reversal is required whenever a biased juror is seated and a verdict is rendered by that jury.").

The question of whether an individual juror is biased actually, rather than impliedly, is a question of fact. *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (rejecting the argument that the question of a juror's bias is a mixed question of law and fact). A finding regarding an individual juror's bias is "based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." *Wainwright v. Witt*, 469 U.S. 412, 428. *See also Brister v. Dir., TDCJ-CID*, No. 1:16-CV-511, 2020 WL 2482117, at *5 (E.D. Tex. Jan. 14, 2020), *report and recommendation adopted*, No. 1:16-CV-511, 2020 WL 1164274 (E.D. Tex. Mar. 10, 2020) (same).

> "Deference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors." *Uttecht v. Brown*, 551 U.S. 1, 9 (2007) (citation omitted). Where federal courts do not afford this deference, they "fail[ ] to respect the

limited role of federal relief in this area prescribed [by] Congress and [Supreme Court's] cases. *Uttecht*, 551 U.S. at 10. Therefore, a state trial court's refusal of a petitioner's challenge for cause, which inherently constitutes a finding of impartiality, is entitled to the presumption of correctness found in 28 U.S.C. § 2254(e)(1). *See Patton*, 467 U.S. at 1038; *Witt*, 469 U.S. at 428; *see also Fuller v. Johnson*, 114 F.3d 491, 500-01 (5th Cir. 1997) (holding that a trial court's finding that a juror was not biased is entitled to a presumption of correctness under both former 28 U.S.C. § 2254(d) and the amended version found in the AEDPA, codified at 28 U.S.C. § 2254(e)(1)).

*Brister v. Dir., TDCJ-CID*, No. 1:16-CV-511, 2020 WL 2482117, at *5. *See also Brown v. Vannoy*, No. 2:18-CV-1544, 2019 WL 5624503, at *5 (W.D. La. Sept. 23, 2019), *report and recommendation adopted*, No. 2:18-CV-1544, 2019 WL 5617024 (W.D. La. Oct. 30, 2019) (factual determination regarding juror bias entitled to presumption of correctness under § 2254(e)(1) which petitioner can only rebut with clear and convincing evidence; and, under § 2254(d)(2), petitioner must show that state court's determination was based on an unreasonable determination of the facts in light of the evidence presented).

# V. Discussion

Nunez's Petition attacks his conviction for sexually abusing two young girls who were eight years old and ten years old, respectively, at the time. *See* Dkt. No. 1 at 2; Dkt. No. 14-35 at 5-6 (containing the judgment in *The State of Texas v. Neftaly Nunez, a/k/a Neftali Nunez Gonzalez a/k/a Neftali Nunez*, Case No. 2017-DCR-01275-E, which notes the ages of Nunez's victims at the time of his offenses). The Court will address each of his claims, although not necessarily in the order presented.

**A.   Nunez's Prosecutorial Misconduct Claims**.   In his Petition and Memorandum in Support, Nunez contends that the prosecution violated his due process

rights under state and federal law.  Dkt. No. 1 at 6; Dkt. No. 11 at 2-4, 13-16.  In particular,

he asserts that the prosecution improperly:

> (1)    told the jury that S.L. was so traumatized by his alleged abuse that she had Post-Traumatic Stress Disorder ("PTSD") and was suicidal, even though there was no evidence in the record to support these claims;
>
> (2)    vouched for the veracity of the complainants multiple times;
>
> (3)    told the jury, without evidentiary foundation, that he was a pedophile, a predator, a liar, and "not like the rest of us[;]"
>
> (4)    asked the jury to "send a message" to Cameron County and the State of Texas;
>
> (5)    told the jury that he had not shown remorse.

*Id.*

Nunez raised each of these claims, except claim two, in his state habeas application.

Dkt. No. 14-35 at 16, 43-49.  The trial court stated that all of his prosecutorial misconduct

claims lacked merit, but it neglected to explicitly mention claims one, four, and five.  Dkt.

No. 14-34 at 15, 17, 19.  The TCCA then denied Nunez's application "without written order

on findings of trial court without hearing and on the court's independent review of the

record." Dkt. No. 14-24 at 1.

For reasons which will be made clear below, identifying the standards ultimately

applicable to § 2254 claims of prosecutorial misconduct can sometimes be a protracted

process.  At the threshold, federal habeas courts are limited to determining whether a

conviction violated *federal* law.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Malchi v.

Thaler*, 211 F.3d 953, 957 (5th Cir. 2000).  Federal habeas courts "lack authority to rule

that a state court incorrectly interpreted its own law." *Charles v. Thaler*, 629 F.3d 494,

500–01 (5th Cir. 2011).  When the highest court in a state affirms a state trial court's legal

conclusions, "those conclusions are state law." *Id.* at 501.  Thus, error under state law "does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of fundamental fairness under the [federal] due process clause." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005) (same).

Next, "AEDPA only applies to claims that are 'adjudicated on the merits' in the state habeas proceedings." *Thomas v. Davis*, 968 F.3d 352, 354–55 (5th Cir. 2020), *cert. denied sub nom. Thomas v. Lumpkin*, 141 S. Ct. 2710, 210 L. Ed. 2d 876 (2021) (quoting *Johnson v. Williams*, 568 U.S. 289, 292 (2013)).  When a petitioner properly raises a federal claim in state court, but is not adjudicated on the merits, federal courts are to review the claim de novo.  *Id.* (citing *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997)).

This rule notwithstanding, federal courts must still apply the presumption that the claim before them "was adjudicated on the merits."  *Thomas v. Davis*, 968 F.3d 352, 354 (citing *Johnson v. Williams*, 568 U.S. 289, at 301 for its holding that, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a court must presume that the federal claim was adjudicated on the merits. . . .").  Or, more correctly, federal courts must presume that the claim was adjudicated on the merits unless a party rebuts the presumption.  *Id.*  Though "strong," the presumption "may be rebutted—either by the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court de novo) or by the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted)." *Johnson v. Williams*, 568 U.S. 289, 301-302.  Federal courts consider the following factors when determining if a party has rebutted the presumption:

whether the claim was clearly presented by the petitioner; whether the state court acknowledged the federal claim; whether the state court referenced federal precedent in its opinion, or included state precedent that "fully incorporate[es] a related federal constitutional right," or, to the contrary, cited "state-law procedural principles" only; and, whether the federal claim is "substantial," such that it would obviously merit discussion. *See* [*Johnson v. Williams*, 568 U.S. 289] at 298-300.

*Blank v. Vannoy*, No. CV 16-00366-BAJ-RLB, 2021 WL 4189534, at *7 (M.D. La. Sept. 14, 2021).

If no party rebuts the presumption, AEDPA deference applies rather than de novo review. *Thomas v. Davis*, 968 F.3d 352, 354.[7]  To determine how to apply AEDPA deference to the type of claims at issue in this case, it is instructive to consider how the Fifth Circuit reviews federal claims targeting improper prosecutorial comments on direct appeal.[8]  On direct appeal, the Fifth Circuit applies a "two-step" process to charges of improper prosecutorial comments. *United States v. Duffaut*, 314 F.3d 203, 210.  First, it determines "whether the prosecutor's comments were improper[.]"  *Id.*  Second, if the comments were improper, it determines "whether they prejudiced the defendant's substantive rights."  *Id.* (citing *United States v. Lankford*, 196 F.3d 563, 574 (5th Cir. 1999)).  The Fifth Circuit applies de novo review to the first inquiry.  *United States v. Barnes*, 979 F.3d 283, 299 (5th Cir. 2020) (citing *United States v. McCann*, 613 F.3d 486, 494 (5th Cir. 2010)).  "In contrast," it reviews "the question of whether . . . the defendant's substantial rights were affected" under "the abuse of discretion standard."  *Id.* (citing *McCann*, 613 F.3d at 494).

---

[7]  Put another way, the AEDPA "relitigation bar" applies and the petitioner can only overcome the bar if he makes the showing required under 28 U.S.C. § 2254(d).  *Lucio v. Lumpkin*, 987 F.3d 451, 465 (5th Cir.), *cert. denied*, 142 S. Ct. 404, 211 L. Ed. 2d 216 (2021).

[8]  Because all of Nunez's prosecutorial misconduct claims target alleged improper comments, the Court need not discuss the standards applicable to other types of prosecutorial misconduct in this Report.

District courts within this circuit also reference this two-step process when reviewing § 2254 claims targeting improper prosecutorial comments. *See, e.g., Stewart v. Middlebrooks,* No. 3:19CV55-GHD-JMV, 2021 WL 3572667, at *14 (N.D. Miss. Aug. 12, 2021) ("A court must review a claim of prosecutorial misconduct in two steps. First, the court must decide whether or not the prosecutor made an improper remark. If the prosecutor made an improper remark, the court must evaluate whether the remark affected the substantial rights of the defendant.") (citations omitted); *Cameron v. Vannoy,* No. CV 18-9502, 2020 WL 5506415, at *14–15 (E.D. La. Jan. 30, 2020), *report and recommendation adopted*, No. CV 18-9502, 2020 WL 2520714 (E.D. La. May 18, 2020), *certificate of appealability denied,* No. 20-30350, 2021 WL 7081077 (5th Cir. Dec. 20, 2021) (same); *Dorsey v. Thaler*, No. CIV.A. H-10-1342, 2011 WL 4046957, at *44 (S.D. Tex. Sept. 7, 2011), *aff'd sub nom. Dorsey v. Stephens*, 720 F.3d 309 (5th Cir. 2013) (same); *Bartie v. Dretke*, No. CIV.A. H-04-0864, 2005 WL 1562725, at *9 (S.D. Tex. July 1, 2005) (same); *Rose v. Johnson*, 141 F. Supp. 2d 661, 707 (S.D. Tex. 2001) (same). However, most district courts do not impose the same standard of review when applying this two-step process in habeas proceedings. *See id.* This is because the standards applicable to state prosecutors in habeas proceedings are not the same as those applied "to federal prosecutors in cases on direct appeal." *Kirkpatrick*, 777 F.2d 272, 281; *Ries v. Quarterman*, 522 F.3d 517, 530; *Tolar v. Dir.*, TDCJ-CID, No. 9:17-CV-8, 2019 WL 11624602, at *5. As noted above, the standard of review is "'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden*, 477 U.S. 168, 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642).

Thus, because prosecutorial misconduct claims present either mixed questions of

law and fact,[9] or pure questions of law,[10] a district court reviewing a § 2254 claim of prosecutorial misconduct must apply the § 2254(d)(1) standard of review.  *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (noting that district courts reviewing § 2254 claims are charged with applying 28 U.S.C. § 2254(d)(1) to questions of law, and mixed questions of law and fact, provided the "the state court adjudicated the claim on the merits."); *Martin v. Cain*, 246 F.3d 471, 475 (same).  This means that, when presented with a claim that the state habeas court has presumably denied on the merits, a federal district court, following the two-step process, must determine if the state habeas court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).

Further, a federal district court may not find § 2254(d)(1) satisfied in this circuit unless the petitioner establishes that the prosecutor's improper remarks were either "so persistent and pronounced, or the evidence so insubstantial that, but for the remarks, no

---

[9] Courts within this circuit frequently note that claims of prosecutorial misconduct present mixed question of law and fact.  *See e.g., Milon v. Vannoy*, No. CV 19-13061, 2020 WL 6468229, at *9–10 (E.D. La. May 14, 2020), *report and recommendation adopted*, No. CV 19-13061-WBV-JCW, 2020 WL 6449156 (E.D. La. Nov. 3, 2020) ("For purposes of federal habeas, a claim of prosecutorial misconduct presents a mixed question of law and fact.  *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (per curiam)."); *Marx v. Vannoy*, No. CV 20-0128, 2020 WL 6048830, at *12 (E.D. La. Sept. 25, 2020), *report and recommendation adopted*, No. CV 20-128, 2020 WL 6043954 (E.D. La. Oct. 13, 2020), *and report and recommendation adopted*, No. CV 20-128, 2020 WL 6742804 (E.D. La. Nov. 17, 2020) (same); *Muse v. Dir., TDCJ-CID*, No. 6:13CV350, 2017 WL 1154953, at *3 (E.D. Tex. Mar. 27, 2017) (same).

[10] One unpublished Fifth Circuit opinion has stated that "[p]rosecutorial misconduct is an issue of law[.]"  *Allen v. Vannoy*, 659 F. App'x 792, 806, n. 70 (5th Cir. 2016) (unpublished) (citing *Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008)).  However, this same opinion makes it clear that prosecutorial misconduct claims are still "reviewable under § 2254(d)(1)."  *Id.  See also Geiger v. Cain*, 540 F.3d 303, 308 (citing § 2254(d)(1) and noting that, under AEDPA, district courts must determine if the state court's treatment of a prosecutorial misconduct claim was contrary to clearly established federal law as determined by the United States Supreme Court.).

conviction would have occurred." *Kirkpatrick*, 777 F.2d 272, 281; *Felde v. Blackburn*, 795 F.2d 400, 403 (same); *Turner v. Johnson*, 106 F.3d 1178, 1188 (same); *Harris v. Cockrell*, 313 F.3d 238, 245 (same). *See also Williams v. Davis*, 192 F. Supp. 3d 732, 751 ("A trial is fundamentally unfair when the prosecutor engages in persistent or pronounced misconduct, or the evidence was so insubstantial that in all probability but for the remarks the jury would not have returned a guilty verdict.") (citations omitted).

With these analytical steps laid out, the Court will now examine Nunez's prosecutorial misconduct claims. As already noted above, each of these five claims assert that the prosecution violated Nunez's federal due process rights by making improper remarks to the jury. Dkt. No. 1 at 6; Dkt. No. 11 at 2-4, 13-16.[11]

**(1) Nunez's First Prosecutorial Misconduct Claim.** Nunez argues that the prosecution improperly told the jury that S.L. was so traumatized by his abuse that she was suicidal and had PTSD. He states that this was improper because there was no evidence in the record to support these claims about her emotional state. Dkt. No. 1 at 6: Dkt. No. 11 at 2, 13-16 (citing Dkt. No. 14-5 at 29); Dkt. No. 20 at 2-5 (citing Dkt. No. 14-5 at 29). Nunez raised this claim in his state habeas application. Dkt. No. 14-35 at 16, 46-49. The trial court found that all of Nunez's prosecutorial misconduct claims lacked merit in its Habeas Order, but it did not mention this specific claim. Dkt. No. 14-34 at 15, 17, 19. The TCCA also did not mention this specific claim because it denied Nunez's

---

[11] To the extent that Nunez asserts prosecutorial misconduct arguments based upon state law, this Court need not independently address those arguments because, as demonstrated below, he has not shown a violation of his federal due process rights. *See Charles v. Thaler*, 629 F.3d 494, 500–01 (noting that federal habeas courts "lack authority to rule that a state court incorrectly interpreted its own law."); *Skillern v. Estelle*, 720 F.2d 839, 852 (noting that error under state law "does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of fundamental fairness under the [federal] due process clause."); *Brown v. Dretke*, 419 F.3d 365, 376 (same).

application "*without written order* on findings of trial court without hearing and on the court's independent review of the record." Dkt. No. 14-24 at 1 (emphasis added).

Applying the "strong" presumption that Nunez's first prosecutorial misconduct claim was adjudicated on the merits in his state habeas proceedings,[12] the Court's first task is to determine if either party has attempted to rebut the presumption. This task is not difficult. Lumpkin does not try to rebut the presumption. He asserts that "the Texas Court of Criminal Appeals implicitly found that the prosecution's argument was proper." Dkt. No. 16 at 7. Nunez, however, asks this Court to "award no deference to the trial court's determination" because it "failed to perform the required inquiry into the issue[.]" Dkt. No. 11 at 14.

As this assertion constitutes an attempt to rebut the presumption, the Court's second task is to determine if Nunez has succeeded by considering the relevant factors listed in *Johnson v. Williams,* 568 U.S. 289, 298-300 (2013). *See Blank v. Vannoy*, No. CV 16-00366-BAJ-RLB, 2021 WL 4189534, at *7 (summarizing the *Johnson v. Williams* factors used to determine whether a party has rebutted the presumption of adjudication, including the factor of "whether the federal claim is 'substantial,' such that it would obviously merit discussion."). Nunez's citations to the record before this Court and in his state habeas proceedings reveal that he is challenging comments the prosecution made during its closing arguments. *See* Dkt. No. 11 at 13-16 (citing "Vol. 5, p. 29," which can be found at Dkt. No. 14-5 at 29); Dkt. No. 14-35 at 16, 47 (same); Dkt. No. 20 at 2-5 (same). During its closing, the prosecution referred to the suicidality and uncontrollable panic attacks experienced by some veterans returning from Word War I, stating "we know today

---

[12] *See Johnson v. Williams*, 568 U.S. 289, 302 (referring to the presumption of adjudication as a "strong one"); *Trottie v. Stephens*, 720 F.3d 231, 240 (5th Cir. 2013) (same).

that [this] is called PTSD." Dkt. No. 14 at 29. The prosecution then stated that, years after Nunez's assault, when a boy from school touched S.L. inappropriately, this "happened to her." *Id.*

> The flashbacks came back and she started crying and crying uncontrollably until a friend of hers said no more. You have got to go get you help. She thought about it. She was going to get pills. She had taken that step that she was going to do it. But for that [friend's] actions, we wouldn't be here today because [S.L.] would probably be dead. And yesterday -- or Tuesday morning the defense attorney ordered [S.L.] to look at the defendant, and she did not want to do that because that man raped her. And I had told her she didn't have to do that. I had told her she could look at me because she was scared and she was angry. So don't take it out on [S.L.] because she didn't want to look at this man who took advantage of her and raped her. And you know what, he raped her physically, but he is raping her emotionally to this day. It stays with them. It stays with them.

*Id.* at 29-30 (formatting altered).

Nunez argues that there was no evidence in the record to support these remarks. Dkt. No. 1 at 6: Dkt. No. 11 at 2, 13-16; Dkt. No. 20 at 2-5. He is not correct. The record reveals that, prior to the prosecution's closing remarks:

1. S.L. testified that, when she was in junior high, a boy from school grabbed her and touched her "private part." Dkt. No. 14-3 at 26, 57-58. When this occurred, she got very upset and had memories from when Nunez raped her. *Id.* at 57-58. She told her friend A.R. at that time that she was suicidal. *Id.* at 58-59. She also told her science teacher that she wanted to kill herself and was having suicidal thoughts. *Id.* at 59-60. She said she wanted to kill herself because she was overwhelmed with flashbacks of the rape. *Id.* at 60. She said that, by the time she told her teacher, she had been having suicidal thoughts for 30 days. *Id.* at 77-78. She had also been cutting herself. *Id.* at 79. Her specific thoughts about killing herself included taking pills. *Id.* at 80.

2. S.L.'s mother testified that S.L. had become suicidal due to Nunez's assault and that S.L had stated that she felt worthless. *Id.* at 101-102.

3. S.L.'s friend, A.R., testified that, in seventh or eighth grade, S.L. told her about the flashbacks, cutting herself, and the rape itself. *Id.* at 123-24. A.R. also stated that S.L. was suicidal during this time. *Id.* at 120-121.

4.     A counselor from S.L.'s school testified that, in eighth grade, when S.L. reported the student who had touched her inappropriately, she also reported the rape and her suicidality.  *Id.* at 135-137.

5.     Elizabeth Guzman, a registered nurse, testified that when she examined S.L., S.L. told her that, leading up to when she told her teacher about the rape, she felt suicidal and wanted to kill herself.  *Id.* at 161, 166-67.[13]

This testimony makes it clear that Nunez's first prosecutorial misconduct claim is based upon an obviously false characterization of the record evidence.[14]  Thus, his attempt to rebut the presumption of adjudication fails to make the required showing under *Johnson v. Williams*.  That is, he has not shown that his claim was "'substantial,' such that it would obviously merit discussion" in state habeas proceedings.  *See Blank*, No. CV 16-00366-BAJ-RLB, 2021 WL 4189534, at *7 (citing *Johnson v. Williams*, 568 U.S. 289, at 299).  *See also Johnson*, 568 U.S. 289, 299 ("[T]here are instances in which a state court may simply regard a claim as too insubstantial to merit discussion.").

Moreover, the fact that the prosecution's opening remarks referenced S.L.'s response to her schoolmate's assault does not alter this conclusion.  In its opening, the prosecution told the jury that it was bringing its case against Nunez in 2017, rather than immediately after the abuse occurred, because S.L. did not report the abuse until 2017.

---

[13] It is not the Court's intention here to provide an exhaustive summary of the evidence.  Instead, the Court intends merely to provide some examples of in-court statements which contradict Nunez's claim about the state of the record evidence prior to the prosecution's closing.

[14] To the extent that Nunez is claiming that the prosecution's remarks were improper because there was no expert PTSD diagnosis for S.L. in the record (*see* Dkt. No. 20 at 2), he has no basis to complain.  The prosecutor did not tell the jury that S.L. had received a PTSD diagnosis, purport to diagnose her himself, or state that her symptoms were as severe as those suffered by shell-shocked war veterans.  Instead, the prosecutor merely referred to suicidality and uncontrollable panic attacks as symptoms of PTSD, and stated that S.L. had experienced these symptoms.  The record evidence amply supported these comments.

Dkt. No. 14-3 at 26.  To explain S.L.'s delay in reporting the abuse, the prosecution stated

that S.L. did not tell anyone about it until her schoolmate's assault brought back the

trauma of what Nunez had done.  *Id.*

> Now, you guys are wondering why in 2017 are we barely getting this case?
> Why is it finally coming to us?  What you're going to find out is that [S.L.]
> went on with her life.  She didn't tell anyone about it.  Then at school a
> traumatic event happens.  You know, boys in middle school are dumb and
> he -- a boy starts touching [S.L.].  He starts grabbing her butt and she says,
> Stop it. Stop it. Stop it.  Well, the kid never gets the hint.  One day he goes
> underneath the table and touches her vagina and she has -- she freaks out.
> The reaction that she got or she gave was -- it was bigger than what was
> anticipated, and it affected her longer than was anticipated till one of her
> friends asked her, [S.L.], what's going on?  I know that that upset you.
> That's when we find out.  That's when we find out what the defendant did.
> That's when we find out how the little girl lived through this, and that's when
> the investigation started rolling.  Four years after the assault. Four years
> after the defendant moved out and had broken up with [S.L.'s mother's
> friend, S.C.] and three years after the defendant had already moved off to
> another part of the state, that's when this investigation unfolds.

*Id.* at 26-27 (formatting altered).

In providing this explanation, the prosecution did not contend that S.L.

experienced suicidality or PTSD as a result of Nunez's abuse.  The prosecution only

referenced S.L.'s suicidality and PTSD symptoms in its closing, after the above-

summarized testimony was introduced into the record.  Accordingly, Nunez has failed to

rebut the presumption of adjudication with respect to his first claim of prosecutorial

misconduct.

Because he has failed to rebut this presumption, this Court must apply AEDPA

deference.  *See Thomas v. Davis*, 968 F.3d 352, 354 (if the presumption of adjudication

is not rebutted, AEDPA deference applies rather than de novo review).  Or, put another

way, this Court must determine if Nunez can overcome AEDPA's "relitigation bar" by

satisfying 28 U.S.C. § 2254(d).  *See Lucio v. Lumpkin*, 987 F.3d 451, 465 (if a claim was

adjudicated on the merits in state habeas proceedings, then the AEDPA "relitigation bar" applies and the petitioner can only overcome the bar if he makes the showing required under 28 U.S.C. § 2254(d).  Because prosecutorial misconduct claims present either mixed questions of law and fact, or pure questions of law,[15] the Court must apply the § 2254(d)(1).  *See Hill v. Johnson*, 210 F.3d 481, 485 (noting that district courts reviewing § 2254 claims are charged with applying 28 U.S.C. § 2254(d)(1) to questions of law, and mixed questions of law and fact, provided the "the state court adjudicated the claim on the merits."); *Martin v. Cain*, 246 F.3d 471, 475 (same).

Under § 2254(d)(1), Nunez must show that the state habeas court's denial of his claim "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  He has not met this burden.  Implicit in the state habeas court's denial of his claim is the determination that the prosecutor's remarks were not improper.  This implicit determination was not contrary to federal law, or an unreasonable application of federal law, because the prosecutor's remarks only referenced evidence that was already in the record.[16]  Thus, having failed to satisfy § 2254(d)(1) Nunez's first prosecutorial misconduct claim should be denied.

**(2) Nunez's Second Prosecutorial Misconduct Claim**.  In a single sentence, Nunez contends that the prosecution improperly vouched for the veracity of the complainants "multiple times."  Dkt. No. 1 at 6.  Nunez does not elaborate on this claim

---

[15] *See supra* footnotes 9 and 10.

[16] Correspondingly, because the remarks were not improper, they fail to form the basis of a claim that they prejudiced Nunez's substantial rights.

in any of his submissions.  *See generally id.*, Dkt. No. 11, Dkt. No. 20.  Further, although

his Memorandum in Support incorporates the arguments that he made in his state habeas

application by reference (*see* Dkt. No. 11 at 15), Nunez's state habeas application and

memorandum in support of that application do not allege that the prosecution improperly

vouched for the veracity of the complainants.  *See* Dkt. No. 14-35 at 9-24, 30-57.

Because Nunez provides no facts to support his claim, his claim is vague,

conclusory, and fails to show a violation of his federal due process rights.[17]  Accordingly,

his second prosecutorial misconduct claim should be denied.  *See Blackledge v. Allison*,

431 U.S. 63, 74 (1977) ("[T]he presentation of conclusory allegations unsupported by

specifics is subject to summary dismissal."); *Schlang v. Heard*, 691 F.2d 796, 799 (5th

Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas

case."); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the

record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in

his pro se petition, unsupported and unsupportable by anything else contained in the

record, to be of probative evidentiary value.").  *See also Psara Energy, Ltd. v. Space

Shipping, Ltd.*, 427 F. Supp. 3d 858, 859 (E.D. Tex. 2019) (noting that an argument not

timely or adequately briefed before the United States Magistrate Judge was abandoned)

(citing *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) and

*DIRECTV, Inc. v. Budden*, 420 F.3d 521, 525–26 (5th Cir. 2005)).

**(3)  Nunez's Third Prosecutorial Misconduct Claim**.  Nunez asserts that

the prosecution improperly told the jury, without evidentiary foundation, that he was a

pedophile, a predator, a liar, and "not like the rest of us."  Dkt. No. 1 at 6; Dkt. No. 11 at 2-

---

[17]  Although Lumpkin does not raise the issue (*see generally* Dkt. No. 16), Nunez has also failed to exhaust this claim by failing to raise it in state habeas proceedings.

3, 13-16; Dkt. No. 20 at 3-5.  Nunez raised this claim in his state habeas proceedings.  Dkt. No. 14-35 at 16, 43-49.  His citations to the record before this Court and in his state habeas proceedings reveal that he is challenging closing arguments the prosecution made during the guilt/innocence and punishment phases of his trial.  *See* Dkt. No. 1 at 6 (citing "RR5, 35" and "RR6:29," which can be found at Dkt. No. 14-5 at 35, and Dkt. No. 14-6 at 29, respectively); Dkt. No. 11 at 13, 15 (same); Dkt. No. 20 at 3-4 (same); Dkt. No. 14-35 at 16, 43, 47 (same).

The state trial court found that Nunez's claim lacked merit and held that the prosecution's "closing argument" did not violate his due process rights.  Dkt. No. 14-34 at 17.  The trial court explained that, although the prosecution's comments were "certainly indecorous," they did not "rise to the level of "extreme or manifestly improper."  *Id.* ("In examining a claim of prosecutorial misconduct, such conduct must be of so great a magnitude that it deprived the defendant of fundamental fairness and due process of law.  U.S. Const., amend. 14.  In the case of closing arguments, misconduct must rise to the level of "extreme or manifestly improper.") (quoting *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008)).  The TCCA then denied Nunez's state habeas application "without written order on findings of trial court without hearing and on the court's independent review of the record."  Dkt. No. 14-24 at 1 (emphasis added).

To prevail before this Court, Nunez must demonstrate that the state habeas court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  *See also Hill v. Johnson*, 210 F.3d 481, 485 (district courts reviewing § 2254 claims are charged with applying 28 U.S.C. § 2254(d)(1) to questions of law, and mixed questions of law and fact, provided the "the state court adjudicated the claim on the

merits.”); *Martin*, 246 F.3d 471, 475 (same).   To make this showing, he must establish

that the prosecutor's improper remarks were “either be so persistent and pronounced, or

the evidence so insubstantial that, but for the remarks, no conviction would have

occurred.” *Kirkpatrick*, 777 F.2d 272, 281; *Felde v. Blackburn*, 795 F.2d 400, 403 (same);

*Turner v. Johnson*, 106 F.3d 1178, 1188 (same); *Harris v. Cockrell*, 313 F.3d 238, 245

(same).

Determining whether Nunez has met his burden requires the Court to first exam

the prosecutorial comments he is challenging.   With respect to the guilt/innocence phase

of his trial, Nunez contends that the prosecutor repeatedly and improperly called him a

“pedophile” and “liar” during his closing argument.   Dkt. No. 1 at 6; Dkt. No. 11 at 2-3, 13-

16; Dkt. No. 20 at 3-5.   Specifically, Nunez is challenging the following comments:

> Let's talk about the defendant.  He chose to take the stand.  I wrote it down.
> I want to get to it so I can quote it correctly.  Defense counsel said that
> there's no way Neftaly Nunez could have raped this little girl and sexually
> assaulted [A.G.] because he was having an intimate and truthful
> relationship.  This man, I tell you, has not a truthful relationship in his life.
> What did he tell [S.C.]?  He didn't even tell her his right name for however
> long they were together.  He was Brandon.  Brandon, this super secret guy
> who was in a secrete police force.  That there was no information and don't
> talk about it.  I can't give you any information about it.  I'm from Puerto
> Rico.  Guess what?  That's a lie.  He wasn't from Puerto Rico.  He's not in
> the super secrete police force, and he's cheating on Joanna [his wife and
> subsequent ex-wife] with [S.C.].  Then he's cheating on [S.C.] with Joanna,
> but he likes truthful, intimate relationships.  And when I ask him, Well,
> weren't you cheating on Joanna with [S.C.]?  Well, yes, she knew when I had
> the baby.  I said, No, before when you were going to hotels and having this
> crazy, random porno cowboy sex?  He's like, Well, I didn't see any reason to
> tell her that.  Why?  Because he doesn't tell the truth.  He's a liar.  He lies to
> get himself out of any predicament.  I mean, he admits he lied to the
> government.  He's using fake documents.  I'll tell you one thing that upset
> me is when he was asked about assaulting [A.G.] and assaulting [S.L.], what
> did he do?  He snorted twice and he laughed three times.  And I tell you
> what, that is not only offensive, but it is creepy.  It is creepy.  It's what a
> pedophile does, all right.  That is what this man is.  He's a pedophile.  And
> defense attorney is like, Why would he get any enjoyment?  It's not the
> enjoyment of having the sex.  It's the enjoyment of controlling a fourth

> grader, of controlling a touching a third grader.  That's what a pedophile
> does.

Dkt. No. 14-5 at 34-35 (errors in original, formatting altered).

With respect to the punishment phase of his trial, Nunez contends that the prosecutor improperly called him a predator and stated that he was "not like the rest of us" during his closing argument.  Dkt. No. 1 at 6; Dkt. No. 11 at 2-3, 13-16; Dkt. No. 20 at 3-5.  Specifically, he is challenging the following comments:

> Folks, we know one thing. We know he is a predator because he is
> fundamentally not like us.  He is hard wired to do this, and that's why he did
> it again and again and again.  There will be no changing.  There will be no
> curing.  There will be no rehabilitation because he'll do it again.

Dkt. No. 14-6 at 29 (formatting altered).

Nunez argues that these above-quoted comments biased the jury against him because they were inflammatory and without evidentiary foundation.  Dkt. No. 1 at 6; Dkt. No. 11 at 2-3, 13-16; Dkt. No. 20 at 3-5.  However, prior to the prosecution's closing arguments, the prosecution presented the jury with abundant evidence that Nunez had preyed upon and sexually assaulted both victims, raping S.L. when she was ten years old, and repeatedly sexually assaulting A.G. when she was eight years old.  *See, e.g.*, Dkt. No. 14-3 at 28, 36, 41-47 (containing S.L.'s testimony that on January 9, 2013, when she was ten years old, Nunez drove her to a remote location and raped her); *id.* at 54-55 (containing S.L.'s testimony that she told A.G. about the rape approximately two weeks after it happened, and that A.G. then told her that Nunez had assaulted her too); *id.* at 56 (containing S.L.'s testimony that she told her friend, S.S., that Nunez had raped her the same year it occurred); Dkt. No. 14-4 at 60, 77 (containing Detective Samuel Esteban Lucio's testimony that A.G. admitted to him that Nunez had assaulted her, and that she told S.L. about this years earlier after S.L. told her that Nunez had raped her); *id.* at 84-

85, 89 (containing Detective Lucio's testimony that S.L.'s friend, S.S., confirmed that S.L. had told her about the rape when they were both still in elementary school, and that based upon his investigation there had been no communication between S.L. and A.G. during the two or three years leading up to S.L.'s outcry and Nunez's arrest); Dkt. No. 14-3 at 177-185 (containing A.G.'s testimony that Nunez had assaulted her numerous times over the course of many months when she was eight years old); and *id.* at 185-187 (containing A.G.'s testimony that S.L. told her that Nunez had raped her shortly after it happened, and that she then told S.L. that he had been sexually assaulting her too).

The prosecution also presented abundant evidence that Nunez was a person who lied repeatedly. *See, e.g.*, Dkt. No. 14-4 at 142, 156-157 (containing the testimony of *defense witness*, Joanna Nunez, who admitted that: (1) she was aware that Nunez had lied to her about the affair he had with S.C.; (2) she was aware that Nunez had lied to S.C. by telling her his name was Brandon; (3) she was aware that Nunez had lied to S.C. when he began cheating on S.C. with her; and (4) she was aware that Nunez had lied about "Well, yeah, everything."); *id.* at 193-194 (containing Nunez's testimony that he was "honest" with S.C., but he "did not see any reason" to tell S.C. that he had resumed having sex with Joanna). In fact, Nunez himself admitted to lying when he testified on his own behalf. Dkt. No. 14-4 at 167, 192-193 (containing Nunez's admission that he lied when using fake identification documents). Contrary to Nunez's claim, then, the prosecution's comments were amply supported by the record evidence.[18]

---

[18] The prosecutor's closing comments during the punishment phase of Nunez's trial were even less objectionable than his closing comments during the guilt/innocence phase of the trial. At the punishment phase, the jury had already concluded that Nunez was guilty of sexually abusing two young girls. Therefore, the evidence *and* the jury's own verdict supported the prosecution's comments that, unlike most people, Nunez was someone who preyed upon young girls. Moreover, in addition to being supported by the evidence, the prosecution's above-quoted comments also qualify as responsive to the arguments Nunez's attorney made at closing. *See, e.g.*, Dkt. No. 14-5

Because the prosecution's comments were amply supported by the record evidence, the state habeas court's decision was not an inconsistent or unreasonable application of "clearly established federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). As the Fifth Circuit has repeatedly held, "[i]t is well established that an attorney may recite to the jury those inferences and conclusions he wishes them to draw from the evidence so long as they are based on the evidence." *United States v. Delgado*, 672 F.3d 320, 336 (5th Cir. 2012) (citing *United States v. Webb*, 950 F.2d 226, 230 (5th Cir. 1991)); *see also Amaro-Solis v. Lumpkin*, No. CV H-21-1634, 2022 WL 748490, at *6 (S.D. Tex. Mar. 11, 2022) (same).

In fact, even on appeal, "'unflattering characterizations of a defendant will not provoke a reversal when such descriptions are supported by the evidence.'" *United States v. Delgado*, 672 F.3d 320, 336 (quoting *United States v. Windom*, 510 F.2d 989, 994 (5th Cir. 1975)); *see also Amaro-Solis v. Lumpkin*, No. CV H-21-1634, 2022 WL 748490, at *6 (same); *Marquez v. United States*, No. EP-12-CR-1351-FM-1, 2019 WL 4278836, at *13 (W.D. Tex. Sept. 10, 2019) (same); *Green v. United States*, No. A-10-CR-185(01) LY, 2013 WL 12222406, at *15 (W.D. Tex. Apr. 17, 2013), *report and recommendation adopted,* No. A-10-CR-185(01)-LY, 2014 WL 12713064 (W.D. Tex. Dec. 5, 2014) (same).

For this reason, federal courts within this circuit routinely hold that unflattering characterizations of a defendant by the prosecution do not violate the due process clause when those characterizations are supported by the evidence. *See, e.g., United States v. Fields*, 483 F.3d 313, 360 (5th Cir. 2007) (finding that defendant's substantial rights were

---

at 19 (containing the defense attorney's argument that Nunez could not have found S.L. "sexually appealing" because he was in an "intimate and fruitful" relationship with his ex-wife at the time).

not affected when the prosecutor referred to him as a "psychopath" during closing argument); *United States v. Delgado*, 672 F.3d 320, 336–38 (finding that defendant's substantial rights were not affected by the prosecution's statement that defendant had lied; statement was a straightforward comment on the evidence, not an attack on the defendant's character unsupported by the record); *Amaro-Solis v. Lumpkin*, No. CV H-21-1634, 2022 WL 748490, at *5–6 (finding prosecutorial statements that defendant was a predator during opening and closing arguments did not violate § 2254 petitioner's due process rights because the evidence reasonably described his behavior as predatory); *Lemoine v. Vannoy*, No. CV 17-4967, 2018 WL 1526564, at *13–15 (E.D. La. Mar. 15, 2018), *report and recommendation adopted*, No. CV 17-4967, 2018 WL 1518454 (E.D. La. Mar. 28, 2018) (prosecution's reference to the defendant as a pervert, child molester, and rapist during closing arguments did not violate federal law because the characterizations were supported by evidence showing that the defendant had raped his niece).

Nunez has not shown that the prosecution's closing comments were without foundation, nor, in context, has he shown that they were persistent and pronounced. As such, the prosecution's comments cannot form the basis of a valid due process claim, much less a claim that Nunez would not have been convicted, "but for" the comments. *See Kirkpatrick*, 777 F.2d 272, 281 (noting that, to render a trial fundamentally unfair, the prosecutor's improper remarks must "either be so persistent and pronounced, or the evidence so insubstantial that, but for the remarks, no conviction would have occurred."); *Felde*, 795 F.2d 400, 403 (same); *Turner*, 106 F.3d 1178, 1188 (same); *Harris*, 313 F.3d 238, 245 (same). *See also Woodfox v. Cain*, 609 F.3d 774, 806 ("Improper prosecutorial remarks are constitutionally unfair only if they are persistent and pronounced, or if the

evidence is so weak that no conviction would have occurred but for the remarks.") (citing *Hughes v. Quarterman*, 530 F.3d 336, 347); *Williams v. Davis*, 192 F. Supp. 3d 732, 751 ("A trial is fundamentally unfair when the prosecutor engages in persistent or pronounced misconduct, or the evidence was so insubstantial that in all probability but for the remarks the jury would not have returned a guilty verdict.") (citations omitted).  For all the foregoing reasons, Nunez's third prosecutorial claim lacks merit and is subject to summary judgment.

**(4) Nunez's Fourth Prosecutorial Misconduct Claim**.  Nunez asserts that the prosecution improperly asked the jury to "send a message" to the State of Texas and Cameron County when sentencing him.  Dkt. No. 11 at 2-3, 13-16; Dkt. No. 20 at 3-5. Nunez raised this claim in his state habeas application.  Dkt. No. 14-35 at 16, 43-49.  The trial court found that all of his prosecutorial misconduct claims lacked merit, but it neglected to explicitly mention this claim.  Dkt. No. 14-34 at 15, 17, 19.  The TCCA also did not mention this claim because it denied Nunez's application "*without written order* on findings of trial court without hearing and on the court's independent review of the record."  Dkt. No. 14-24 at 1 (emphasis added).

As noted above, the Court must apply the strong presumption that Nunez's claim here was adjudicated on the merits in his state habeas proceedings.  *See Johnson*, 568 U.S. 289, 302 (referring to the presumption of adjudication as a "strong one"); *Trottie v. Stephens*, 720 F.3d 231, 240 (same).  Lumpkin does not attempt to rebut the presumption (*see* Dkt. No. 16 at 7), but Nunez asks this Court to "award no deference to the trial court's determination" because it "failed to perform the required inquiry into the issue[.]"  Dkt. No. 11 at 14.  To determine whether Nunez has successfully rebutted the presumption of adjudication, the Court must consider the relevant factors listed in *Johnson,* 568 U.S. 289,

298-300 (2013).  *See Blank*, No. CV 16-00366-BAJ-RLB, 2021 WL 4189534, at *7 (summarizing the *Johnson v. Williams* factors used to determine whether a party has rebutted the presumption of adjudication, including the factor of "whether the federal claim is 'substantial,' such that it would obviously merit discussion.").

Nunez's citations to the record before this Court and in his state habeas proceedings reveal that he is challenging statements the prosecution made during the punishment phase of his trial.  *See* Dkt. No. 11 at 13-16 (citing trial volume 6 at p. 30, which can be found at Dkt. No. 14-6 at 30); Dkt. No. 14-35 at 16, 47 (same); Dkt. No. 20 at 2-5 (same).  In particular, and in context, he is challenging the following remarks:

> Folks, the strength of a society is determined about how we protect our most vulnerable and S.L. and A.G. are our most vulnerable.  Our laws are strong only if we have the strength to uphold them and to assert them.  *To say that it's okay because he's going to go to Mexico.  Well, there are little kids in Mexico and they're important too.  They have neighbors and families over there.  They don't want their babies raped either.  So send him back and let him rape whoever he wants.  Ladies and gentlemen of the jury, send a message.  We have to have the power to send a message to the State of Texas and to Cameron County.*  The states asks you to send this predator, who rapes children and molests children, on Count I no less than 60 years, no less than 60 years.  On Count II, there's no question.  He deserves the maximum of 20 years.  And you know that's what we're asking for.  Are we going to let a child rapists back on the street?  There's nothing to prevent you from sentencing him to the maximum amount on Count I, which is 99 years.  It is in your hands.  Are we going to let this child rapist out on our street?  This man with slicked-back hair, young looking 32-year-old man, are we going to let him back on the street?  Sentence him to what he deserves.  Sentence him to what he deserves because, guess what, he sentenced those two girls for life.  Thank you.

Dkt. No. 14-6 at 29-30 (emphasis added, formatting altered).

It is critical to note that the prosecution's argument here was in response to the remarks Nunez's attorney made during the punishment phase.  During the punishment phase, Nunez's attorney repeatedly suggested that the jury need not worry about Nunez reoffending in their community, if they gave him a "low amount of jail time," because he

would likely be removed from this country after he served his sentence.  Dkt. No. 14-6 at

25.

> You heard him testify on the stand that he was here only because of his
> family.  I don't know what's going to happen in this country.  I know there's
> a President right now that's designing to build a giant wall to keep
> everything out of this country, unless you fly over.  *I don't think we have to
> worry about him being in our communities*.  I don't know that for sure.
> That's where I think this country is going.  You heard serious questioning of
> a witness right now that Mr. Neftaly going to put himself in a position to do
> the same thing to other kids.  At least in this country, the laws are incredibly
> strict.  Based on your conviction already, if he was ever allowed to stay in
> this country, he would, of course, have to register with law enforcement
> immediately.  He'd have to be restricted on where he could live, where he
> could work, where he could ever go anywhere.  Because with this type of
> conviction, this type of finding, he can't be anywhere near children.  If he
> fails to do that, that's an additional criminal charge.  *Of course, if he was
> here illegally, that would be even worse for him.  So I'm arguing to you
> that he's not going to pose a danger in this community or anywhere else in
> this country.  And where he will likely be living . . . . He will likely be living
> will not be here.  He will not be in your neighborhoods.  He won't be in
> Brownsville.  He won't be in Austin.*  So he's being punished in lot of ways.
> *What I ask from you is, especially if you had some hesitation earlier, is to
> take that into consideration. . . .* So please have some mercy on him.  His
> punishment will be long, not just in his soul, but long *because he's not
> coming back here anymore.  He's gone.*

Dkt. No. 14-6 at 24-26 (emphasis added, formatting altered).

In Texas, "proper closing argument by the prosecution in criminal trials includes

the following: (1) summation of the evidence; (2) reasonable deduction drawn from the

evidence; (3) answer to opposing counsel's argument; and (4) pleas for law enforcement."

*Eldrige v. Dir. TDCJ - CID*, No. 7:18-CV-00163-O-BP, 2019 WL 5580130, at *5 (N.D. Tex.

Sept. 30, 2019), *report and recommendation adopted sub nom. Eldrige v. Davis*, No.

7:18-CV-163-O-BP, 2019 WL 5579128 (N.D. Tex. Oct. 29, 2019) (citing *Wesbrook v. State*,

29 S.W.3d 103, 115 (Tex. Crim. App. 2000)).  Here, the jury had already found Nunez

guilty of "aggravated sexual assault of a child" and "indecency with a child by sexual

contact."  Dkt. No. 14-35 at 5-6.  The argument Nunez's attorney made to the jury, then,

qualifies both as a plea for law enforcement and an answer to opposing counsel's argument.  As such, the prosecution's argument falls well within "the approved general areas of argument."  *Eldrige v. Dir. TDCJ - CID*, No. 7:18-CV-00163-O-BP, 2019 WL 5580130, at *5.  *See also United States v. Ruiz*, 987 F.2d 243, 248–49 (5th Cir. 1993) ("It is well-settled that, unless the prosecutor intended to inflame, 'an appeal to the jury to act as the conscience of the community is not impermissible.'") (quoting *United States v. Phillips,* 664 F.2d 971, 1030 (5th Cir. Unit B 1981)); *United States v. Valas*, 822 F.3d 228, 243 (5th Cir. 2016) (same).

Because the prosecution's argument fell well within the approved general areas of argument, Nunez has not made the required showing under *Johnson v. Williams*.  That is, he has failed to rebut the presumption of adjudication because he has not shown that his claim was "'substantial,' such that it would obviously merit discussion" in state habeas proceedings.  *See Blank*, No. CV 16-00366-BAJ-RLB, 2021 WL 4189534, at *7 (citing *Johnson*, 568 U.S. 289, at 299).  *See also Johnson*, 568 U.S. 289, 299 ("[T]here are instances in which a state court may simply regard a claim as too insubstantial to merit discussion.").

Because he has failed to rebut the presumption of adjudication, this Court must apply AEDPA deference.  *See Thomas v. Davis*, 968 F.3d 352, 354 (if the presumption of adjudication is not rebutted, AEDPA deference applies rather than de novo review).  Or, put another way, the Court must determine if Nunez can overcome AEDPA's "relitigation bar" by satisfying 28 U.S.C. § 2254(d).  *See Lucio v. Lumpkin*, 987 F.3d 451, 465 (if a claim was adjudicated on the merits in state habeas proceedings, then the AEDPA "relitigation bar" applies and the petitioner can only overcome the bar if he makes the showing required under 28 U.S.C. § 2254(d)).  Here, because prosecutorial misconduct claims

present either mixed questions of law and fact, or pure questions of law,[19] the Court must apply the § 2254(d)(1). *See Hill v. Johnson*, 210 F.3d 481, 485 (noting that district courts reviewing § 2254 claims are charged with applying 28 U.S.C. § 2254(d)(1) to questions of law, and mixed questions of law and fact, provided the "the state court adjudicated the claim on the merits."); *Martin*, 246 F.3d 471, 475 (same).

Under § 2254(d)(1), Nunez must show that the state habeas court's denial of his claim "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  He has not met this burden.  Implicit in the state's denial of his claim is the determination, either that the prosecutor's remarks were not improper, or that the prosecutor's remarks did not violate Nunez's substantial rights.  Nunez has cited no authority demonstrating that these implicit determinations are contrary to federal law, or an unreasonable application of federal law.  Thus, having failed to satisfy § 2254(d)(1) Nunez's fourth prosecutorial misconduct claim is subject to summary judgment.

**(5) Nunez's Fifth Prosecutorial Misconduct Claim**.  Nunez contends that the prosecution improperly commented on his failure to testify by telling the jury that he had shown no remorse for his actions. Dkt. No. 11 at 2-3, 13-16; Dkt. No. 20 at 3-5.  Nunez raised this claim in his state habeas application.  Dkt. No. 14-35 at 48-49.  The trial court stated that all of his prosecutorial misconduct claims lacked merit, but it neglected to explicitly mention this claim.  Dkt. No. 14-34 at 15, 17, 19.  The TCCA also did not mention this claim because it denied Nunez's application "without written order on findings of trial

---

[19] *See supra* footnotes 9 and 10.

court without hearing and on the court's independent review of the record." Dkt. No. 14-24 at 1.

Here again, the Court must apply the strong presumption that Nunez's claim was adjudicated on the merits in his state habeas proceedings. *See Johnson*, 568 U.S. 289, 302 (referring to the presumption of adjudication as a "strong one"); *Trottie v. Stephens*, 720 F.3d 231, 240 (same). Lumpkin does not attempt to rebut the presumption (*see* Dkt. No. 16 at 7), but Nunez asks this Court to "award no deference to the trial court's determination" because it "failed to perform the required inquiry into the issue[.]" Dkt. No. 11 at 14. To determine whether Nunez has successfully rebutted the presumption of adjudication, the Court must consider the relevant factors listed in *Johnson v. Williams,* 568 U.S. 289, 298-300 (2013). *See Blank*, No. CV 16-00366-BAJ-RLB, 2021 WL 4189534, at *7 (summarizing the *Johnson v. Williams* factors used to determine whether a party has rebutted the presumption of adjudication, including the factor of "whether the federal claim is 'substantial,' such that it would obviously merit discussion.").

Nunez's citations to the record before this Court and in his state habeas proceedings reveal that he is challenging closing statements the prosecution made during the punishment phase of his trial. *See* Dkt. No. 11 at 13, 15, (citing trial volume 6 at p. 29, which can be found at Dkt. No. 14-6 at 29); Dkt. No. 14-35 at 48 (same); Dkt. No. 20 at 4 (same). In particular, and in context, he is challenging the following remarks:

> [S.L. and A.G. are] victim's for life. And you know what, A.G. she's 13. When it -- when she's old enough to realize and let it really sink in, it will haunt them the rest of their lives. This man laughed. He doesn't mean anything. He has taken zero responsibility. He has shown zero remorse for anything that he did.

Dkt. No. 14-6 at 29 (errors in original, formatting altered).

Critically, the prosecutor's comments here reveal that he was not commenting on Nunez's failure to testify at the punishment phase of his trial.  The prosecutor states, "[t]his man laughed." Dkt. No. 14-6 at 29.  This is a clear reference to Nunez's demeanor while testifying during the guilt/innocence phase of his trial.  At the guilt/innocence phase of his trial, the prosecutor repeatedly asked Nunez if he had sexually assaulted S.L. and A.G.  Nunez stated that he had not assaulted either girl, but the record indicates that he laughed at the questions.  *See* Dkt. No. 14-4 at 200.  *See also* Dkt. No. 14-5 at 35 ("I'll tell you one thing that upset me is when he was asked about assaulting [A.G.] and assaulting [S.L.], what did he do?  He snorted twice and he laughed three times.").  Or, more precisely, the record: (1) confirms that Nunez did not deny laughing at the questions when specifically asked if he had laughed, and (2) indicates that he had laughed because he thought the questions were "absurd."  Dkt. No. 14-4 at 200 ("Q.  Okay, well, I just saw you laugh three or four times when you were asked about sexually assaulting two little girls; isn't that true?  A.  It's absurd for you to think that I raped those kids.").

The prosecutor's comments regarding Nunez's demeanor while testifying during the guilt/innocence phase of his trial cannot constitute a violation of Nunez's right to remail silent for the simple reason that Nunez did not remail silent.  Accordingly, because the record contradicts his claim, Nunez has not made the required showing under *Johnson v. Williams*.  That is, he has failed to rebut the presumption of adjudication because he has not shown that his claim was "'substantial,' such that it would obviously merit discussion" in state habeas proceedings.  *See Blank*, No. CV 16-00366-BAJ-RLB, 2021 WL 4189534, at *7 (citing *Johnson*, 568 U.S. 289, at 299).  *See also Johnson*, 568 U.S. 289, 299 ("[T]here are instances in which a state court may simply regard a claim as too insubstantial to merit discussion.").

Because he has failed to rebut the presumption of adjudication, this Court must apply AEDPA deference. *See Thomas v. Davis*, 968 F.3d 352, 354 (if the presumption of adjudication is not rebutted, AEDPA deference applies rather than de novo review). Or, put another way, the Court must determine if Nunez can overcome AEDPA's relitigation bar by satisfying 28 U.S.C. § 2254(d). *See Lucio v. Lumpkin*, 987 F.3d 451, 465 (if a claim was adjudicated on the merits in state habeas proceedings, then the AEDPA "relitigation bar" applies and the petitioner can only overcome the bar if he makes the showing required under 28 U.S.C. § 2254(d)). Here, because prosecutorial misconduct claims present either mixed questions of law and fact, or pure questions of law,[20] the Court must apply the § 2254(d)(1). *See Hill*, 210 F.3d 481, 485 (noting that district courts reviewing § 2254 claims are charged with applying 28 U.S.C. § 2254(d)(1) to questions of law, and mixed questions of law and fact, provided the "the state court adjudicated the claim on the merits."); *Martin*, 246 F.3d 471, 475 (same).

Under § 2254(d)(1), Nunez must show that the state habeas court's denial of his claim "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). He has not met this burden. Implicit in the state's denial of his claim is the determination, either that the prosecutor's remarks were not improper, or that the prosecutor's remarks did not violate Nunez's substantial rights. Nunez has cited no authority demonstrating that these implicit determinations are contrary to federal law, or an unreasonable application of federal law. And, as already shown above, Nunez would be hard-pressed to find such authority because the prosecutor's comments were not

---

[20] *See supra* footnotes 9 and 10.

directed at Nunez's failure to testify during the punishment phase of his trial. *See supra* at p. 43 *See also Amaro-Solis v. Lumpkin,* No. CV H-21-1634, 2022 WL 748490, at *7–8 (prosecutor's remarks about defendant's lack of remorse during the punishment phase of trial were not improper comments on defendant's failure to testify during that phase because the remarks reasonably pertained to the defendant's testimony and demeanor in front of the jury during the guilt-innocence phase of the trial); *Bingham v. Dir., Texas Dep't of Crim. Just., Corr. Institutions Div.*, No. 3:19-CV-2716-L-BK, 2021 WL 2211864, at *3 (N.D. Tex. Apr. 15, 2021), *report and recommendation adopted,* No. 3:19-CV-2716-L-BK, 2021 WL 2206835 (N.D. Tex. May 31, 2021) ("In Bingham's case, the State was merely referencing the alleged lack of remorse in Bingham's recorded jail call. Thus, the State's argument was connected to evidence in the record and not an improper comment upon Bingham's failure to testify.") (citations omitted); *Davis v. State*, 782 S.W.2d 211, 222–23 (Tex. Crim. App. 1989) (finding that a prosecutor's remarks regarding a defendant's lack of remorse were supported by the evidence observed by the jury and thus were not improper).

Nunez has failed to satisfy § 2254(d)(1). Therefore, his fifth prosecutorial misconduct claim does not entitle him to relief. For the reasons provided above, all of Nunez's prosecutorial misconduct claims are subject to summary judgment.

**B.** **Nunez's Confrontation Clause Violation Claim**. Nunez claims that the trial court violated his Confrontation Clause rights. He contends that this occurred when it allowed Officer Sam Lucio to testify about a statement that a Tropical Texas representative allegedly made to S.L.'s mother, M.L. Dkt. No. 1 at 7; Dkt. No. 11 at 1-4, 6-

7, 16-19.  Dkt. No. 20 at 5-7, 10-12.[21]  Nunez asserts that, according to Officer Lucio, M.L. told him, that a Tropical Texas representative told her, that Nunez was "'the one that abused [her] daughter.'"  Dkt. No. 11 at 6 (brackets in original).  Nunez argues that allowing the jury to hear the Tropical Texas representative's out-of-court statement violated his rights because the statement directly implied that he was guilty of the crime charged and he did not have the opportunity to question the Tropical Texas representative.  *Id.* at 17 (citing "RR4: 71," which can be found at Dkt. No. 14-4 at 71); Dkt. No. 20 at 5 (same).[22]

Nunez raised this claim in his state habeas application.  Dkt. No. 14-35 at 18, 50-53.  The state trial court found that Nunez's claim lacked merit.  Dkt. No. 14-34 at 15, 17-18.  The trial court explained that Officer Lucio's testimony was not offered as evidence that Nunez was the person that had assaulted S.L.  *Id.* at 17-18.  Rather, his testimony was offered as evidence of when M.L. first learned that Nunez had assaulted her daughter.  *Id.* at 18 ("[T]he testimony given by detective Lucio was about a non-testimonial statement made for the purpose of establishing a timeline, not explicitly for establishing Applicant as the perpetrator involved in the investigation.").  The TCCA then denied Nunez's state habeas application "without written order on findings of trial court without hearing and on the court's independent review of the record."  Dkt. No. 14-24 at 1 (emphasis added).

To prevail before this Court, Nunez must demonstrate that the state habeas court's

---

[21]  Again, Nunez's reference to "Tropical Texas" here is a reference to Tropical Texas Behavioral Health, an organization that provides a wide array of behavioral health services for adults and children.  *See*  https://www.ttbh.org/about-tropical-texas-behavioral-health  (last visited on August 19, 2022).

[22]  At one point, Nunez also suggests that he did not have the opportunity to cross-examine M.L.  Dkt. No. 11 at 17.  However, M.L. testified at Nunez's trial and Nunez's attorney had the opportunity to question her.  *See* Dkt. No. 14-3 at 94-118.

decision here "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]" *See Atkins v. Hooper*, 979 F.3d 1035, 1045, 1047 (holding that § 2254(d)(1) applies to a state's legal determination regarding whether an out-of-court statement violated the petitioner's Confrontation Clause rights). Additionally, even if Nunez makes this showing, he must also satisfy the test announced by the Supreme Court in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Id.* at 1049 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, and *Horn v. Quarterman*, 508 F.3d 306, 322 n.24, and noting that "Confrontation Clause violations are subject to harmless-error analysis" in § 2254 proceedings). Specifically, he must show that the violation of his Confrontation Clause rights had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, and quoting *Kotteakos v. United States*, 328 U.S. 750, 776). *See also Brown v. Davenport*, No. 20-826, 2022 WL 1177498, at *3 ("When a state court has ruled on the merits of a state prisoner's claim, a federal court cannot grant relief without first applying both the test this Court outlined in *Brecht* and the one Congress prescribed in AEDPA."); *Williams v. Superintendent SCI Green*, No. 3:20-CV-908, 2022 WL 1321128, at *5 ("In addition to satisfying either prong of § 2254, a petitioner must also satisfy the test announced by the Supreme Court in *Brecht v. Abrahamson*[.] . . . To satisfy *Brecht*, a state prisoner must demonstrate that the trial error "had substantial or injurious effect or influence in determining the jury's verdict.") (quoting *Brecht*, 507 U.S. 619, 637, and citing *Brown v. Davenport*, 2022 WL 1177498, at *3, 9).

In *Crawford v. Washington*, the Supreme Court held, that the prosecution violates the Confrontation Clause when it introduces "testimonial" statements from a witness who did not appear at trial unless the witness "was unavailable to testify, and the defendant

had a prior opportunity for cross-examination."  541 U.S. 36, 53–54.  However, only "testimonial" statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821.  "[A] statement that is not testimonial cannot violate the Confrontation Clause." *Brown v. Epps*, 686 F.3d 281, 286 (quoting *United States v. Vasquez*, 234 Fed. Appx. 310, 313).

> The Crawford Court described a testimonial statement as "'[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact,'" a description which includes "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'". . . . The Court subsequently clarified that a statement is not testimonial if it is procured for the primary purpose of allowing police to assist in an ongoing emergency or if it is procured under other circumstances where the primary purpose is not to create an out-of-court substitute for trial testimony.

*Id*. at 286–87 (citations omitted).

Here, the state habeas court found that Officer Lucio's testimony concerned a "non-testimonial" statement procured for the purpose of "establishing a timeline," and not for the purpose of establishing that Nunez was "the perpetrator involved in the investigation." Dkt. No. 14-34 at 18.  This finding is supported by the record.  During his direct examination, the prosecutor questioned Officer Lucio about his interview with M.L. Dkt. No. 14-4 at 71.  The prosecutor then specifically asked Officer Lucio if M.L. knew that Nunez had assaulted her daughter prior her daughter's outcry at school.  *Id*.  In response, Officer Lucio stated:

> Not before she — she told me that a school counselor came to her house and told her that she needed to come to the school because her daughter was having suicidal thoughts, and not until she got to the school was she told. She told me that Texas Tropical — because there was somebody from Texas Tropical there evaluating the child because she had mentioned suicidal thoughts. The Texas Tropical asked her who is Neftaly Nunez and she said, That's the godfather of my son.  And they said, Well, he's the one that abused your daughter.  That's when she found out.

*Id.* (formatting altered).

It is clear from the context of the questioning here that Officer Lucio was not referencing the statement made by the Tropical Texas representative to suggest that Nunez was guilty of the crime charged, or even to suggest that the representative believed that Nunez was guilty.  Rather, Officer Lucio referenced the statement to convey his understanding of when M.L. first learned that her daughter had been assaulted.  It is also clear that the Tropical Texas representative was not making a solemn declaration or affirmation for the purpose of proving that Nunez had committed the assault, which the representative reasonably believed would be offered at trial to prove that fact.  Instead, the timing and nature of the representative's question and subsequent statement indicate that the representative was: (1) trying to determine if M.L. knew Nunez; and (2) trying to inform M.L. regarding what S.L. had said about Nunez.  Thus, the primary purpose of the Tropical Texas representative's statement was not to create an "out-of-court substitute for trial testimony." *See Brown v. Epps*, 686 F.3d 281, at 287 (citations omitted).

Consequently, Officer Lucio's testimony did not reference a testimonial statement which violated Nunez's Confrontation Clause rights.  Nunez has failed to demonstrate that the state habeas court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]" *See* 28 U.S.C. § 2254(d)(1).  Moreover, even if the Court were to find otherwise, Nunez's claim would still be subject to summary judgment because he has not shown that the alleged violation of his Confrontation Clause rights had a "substantial and injurious effect or influence in determining the jury's verdict." *Atkins*, 979 F.3d 1035, 1049 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, and quoting *Kotteakos v. United States*, 328 U.S. 750, 776).  *See also Brown v. Davenport*, 2022 WL 1177498, at *9 ("[A]

federal court must *deny* relief to a state habeas petitioner who fails to satisfy either this Court's equitable precedents or AEDPA.  But to *grant* relief, a court must find that the petitioner has cleared both tests.") (emphasis in original).

**C.  Nunez's Biased Juror Claim**.  Nunez contends that the trial court improperly allowed a biased juror to serve on the jury.  He claims that, during jury selection, venire member 56 stated that A.G. had been one of her students and that she knew some of the witnesses as well.  When asked if her knowledge of these individuals would impair her ability to be fair and impartial, this venire member said she could not be 100 percent certain that she could be fair, though she would try her best.  Nunez states that Venire member 56 was never rehabilitated and ultimately became juror number 12. He contends that this violated his constitutional right to an impartial jury.  Dkt. No. 1 at 7; Dkt. No. 11 at 7-8, 19-20; Dkt. No. 20 at 7-8.

Lumpkin contends that Nunez's biased juror claim is subject to summary judgment.  Dkt. No. 16 at 11-13.  He notes that jurors can either be actually biased as a matter of fact, or impliedly biased as a matter of law.  *See id.* at 12.  He asserts that this Court may not find that venire member 56 was impliedly biased because implied bias applies only in "extreme situations not presented here."  Dkt. No. 16 at 12, n. 2.  With respect to actual bias, Lumpkin contends that venire member 56 did not demonstrate such bias.

> Venireperson 56 was not actually biased.  In fact, she demonstrated an understanding that Nunez was entitled to a fair trial and indicated that she "would try [her] best."  Dkt. No. 14-2 at 33.  And she also remained silent when the jury panel was directly asked about potential biases.  When [the prosecutor] asked "[i]s there anybody here who can't give the defendant a fair trial just based on the allegations . . . ?", venireperson 56 did not indicate that she could not.  Dkt. No. 14-2 at 36–37.  Venireperson 56 also did not indicate that she had a personal history with sexual abuse that might impute a bias.  *See id.* at 38–40.  And venireperson 56 did not respond when the

> jury panel was asked whether they could not follow the law with respect to the range of punishment or the burden of proof.  *Id.* at 68-69; 86-87.

Dkt. No. 16 at 13.  Lumpkin additionally argues that Nunez has not shown that the state habeas court's resolution of his claim "was unreasonable under AEDPA."  *Id.*

In examining the parties' arguments, the Court must note that, on appeal, the state court of appeals first held that Nunez failed to show that he had preserved error with respect to this claim.  Dkt. No. 14-13 at 10.  The appellate court then went on to hold that, even presuming that Nunez had preserved error, he still had failed to show that the trial court abused its discretion in overruling Nunez's challenge for cause.  *Id.*  This second holding is somewhat curious because the record before this Court contains no evidence that either party ever moved to challenge venire member 56.  *See generally* Dkt. No. 14-2 at 15-150 (containing the transcript for the entire voir dire proceedings).  On appeal, Nunez argued that the trial court abused its discretion in allowing venire member 56 to become juror number 12, but he did not specifically state that venire member 56 was challenged by himself or the State.  *See* Dkt. No. 14-10 at 17, 28-29, 34-36; Dkt. No. 14-12 at 8-9.  Conversely, the State argued on appeal that Nunez's trial counsel did attempt to strike venire member 56 for cause, but the State provided no record citation to support this assertion.  *See* Dkt. No. 14-11 at 13.  A review of the voir dire transcript in its entirety reveals that neither Nunez nor the State attempted to challenged venire member 56.  *See* No. 14-2 at 15-150.

After losing on appeal, Nunez raised his instant claim in his state habeas application.  Dkt. No. 14-35 at 20, 54-56.  The state trial court found that Nunez's claim lacked merit.  Dkt. No. 14-34 at 15, 18.  In reaching this conclusion, the trial court did not address whether any party moved to challenge venire member 56.  *Id.*  Instead of

mentioning the issue, the court confined itself to reviewing venire member 56's "effect on the fairness and impartiality of the jury." Dkt. No. 14-34 at 18. The court explained that the fact that a juror knows one of the parties to a suit is, by itself, an insufficient basis for disqualification. *Id.* In Nunez's case, the court found that although venire member 56 did vacillate regarding her ability to be fair, her "familiarity with the victim" was "attenuated enough" to have an insignificant impact. *Id.* (holding that seating of venire member 56 had a "negligible effect on the fairness and impartiality of the jury"). The TCCA then denied Nunez's state habeas application "without written order on findings of trial court without hearing and on the court's independent review of the record." Dkt. No. 14-24 at 1 (emphasis added).

To the extent that the state habeas court's ruling can be construed as a finding of no implied bias as a matter of law, Lumpkin has the stronger argument. Nunez may not prevail here because there is no evidence in the record to suggest that venire member 56's connection to A.G. or any other witness was close, or of the kind that qualifies for a finding of implied bias. *See United States v. Bishop*, 264 F.3d 535, 554 (noting that juror bias is only "implied or presumed in extreme circumstances" such as "when the juror is employed by the prosecuting agency, is a close relative of a participant in the trial, or is somehow involved in the transaction that is the subject of the trial"); *Solis v. Cockrell*, 342 F.3d 392, 395 (same). To the extent that the state habeas court's ruling can be construed as a finding of no implied bias then, Nunez has not demonstrated that the state habeas court's ruling was: (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

To the extent that the state habeas court's ruling can be construed as a finding of no actual bias as a matter of fact, Lumpkin must prevail here as well. Under § 2254(e)(1), a state habeas court's factual determination regarding juror bias is entitled to the presumption of correctness, and a petitioner may only rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Brown v. Vannoy*, No. 2:18-CV-1544, 2019 WL 5624503, at *5. Additionally, even if this were not the case, under § 2254(d)(2), a petitioner must show that state court's determination was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2); *Brown v. Vannoy*, No. 2:18-CV-1544, 2019 WL 5624503, at *5. With respect to evidence, Nunez only references venire member 56's voir dire testimony. Dkt. No. 1 at 7; Dkt. No. 11 at 19-20; Dkt. No. 20 at 7. Venire member 56 did express uncertainty during voir dire, but cumulatively her testimony does not show that her acquaintance with A.G. or any other witness prevented or substantially impaired the performance of her duties as a juror in accordance with her instructions and oath.

This is best demonstrated by reviewing venire member 56's testimony in context. Venire member 56 first mentioned her acquaintance with A.G. and some of the other witnesses when the prosecutor asked all the prospective jurors if they knew any of the witnesses. Dkt. No. 14-2 at 32. Venire Member 56 responded that she worked at Porter High School and that some of the student witnesses' names looked "familiar" and that she had A.G. as a student. *Id.* The prosecutor then asked venire member 56 if there was "anything about knowing those students that would make – that would make you not be a fair juror in this case?" Venire member 56 began to respond, stating that she "would like to say no, but . . . ." At this point the prosecutor interrupted her to ask her if she believed the defendant deserved a fair trial. She responded yes. *Id.* at 32-33. Their

exchange then continued as follows:

> MR. RODRIGUEZ:  And part of the job of the juror is to weigh the testimony and credibility of the witnesses.  Knowing them, could you be fair and weigh the truthfulness or voracity of the student's testimony the same way you could any of the other witnesses and be honest?
>
> VENIRE MEMBER 56:  I mean, honestly I would try my best, but I can't say with a hundred percent certainty.

*Id.* at 33 (formatting altered).

Venire member 56's voir dire testimony here does *suggest* that she may have been more inclined to believe the testimony of A.G. or the other students over that of the defense, but it does not do more than that.  In fact, she does not specify why her knowledge or relationship with these students might make her job of weighing their testimony against that of the defense difficult.  Her testimony is ambiguous and does not rule out the possibility that her knowledge and relationship with these students might make her less, rather than more, inclined to believe their testimony.  Indeed, in their affidavits, both defense attorneys indicate that, after witnessing her testimony, they preferred to keep venire member 56 on the jury.  Both defense attorneys explained their position by noting that, as husbands of educators, they were aware that teachers are in a better position than most to know that children do not always tell the truth and sometimes make false allegations.  *See* Dkt. No. 14-34 at 6, 10.

> I believe that educators better than most people do know that children can be untruthful.  As a former educator and the husband of an educator, I am aware that educators have  to deal with false allegations against themselves or their fellow educators frequently.  Educators also hear from students about all sorts of excuses as to why something happened or didn't happen.  In short, teachers know that children lie.  We felt that to be the case with this venireperson and we believed that they could help make the case that children to make false outcries.

*Id.* at 10 (errors in original); *see also id,* at 6 ("[A]s the husband of an educator . . . I am

aware that educators have to deal with false allegations against themselves or their fellow educators frequently. . . . [W]e believed that [venire member 56] could help make the case that children [] make false outcries.").

More critically, even presuming that venire member 56's uncertainty was based upon a worry that she might be biased in favor of the prosecution, venire member 56 did not actually state that she could not be fair or impartial.  To the contrary, when the prosecution asked if, after hearing the allegations, anyone on the panel felt that they could not be fair and impartial and could not give Nunez a fair trial, she did not raise her hand or otherwise respond.  Dkt. No. 14-2 at 36–39.  She also did not indicate that she or her family had a history with sexual abuse that would prevent her from being impartial.  *Id.* at 38-40.  Finally, when asked, venire member 56 did not state that she could not follow the law with respect to the range of punishment or the burdens of proof.  *Id.* at 68-69; 86-87.

Thus, at best, venire member 56's voir dire testimony was ambiguous.  In *Patton v. Yount*, the Supreme Court noted that ambiguous and even contradictory testimony "is not unusual on voir dire examination."  467 U.S. 1025, 1039.  Explaining its position, the Court opined:

> It is well to remember that the lay persons on the panel may never have been subjected to the type of leading questions and cross-examination tactics that frequently are employed, and that were evident in this case. Prospective jurors represent a cross section of the community, and their education and experience vary widely. Also, unlike witnesses, prospective jurors have had no briefing by lawyers prior to taking the stand. Jurors thus cannot be expected invariably to express themselves carefully or even consistently.

*Id.*  For this reason, when viewing testimony similar to venire member 56's testimony, the Fifth Circuit held that a state habeas court's finding of juror non-bias in a sexual battery case was not an unreasonable determination of the facts. *Seigfried v. Greer*, 372 F. App'x

536, 539–40 (5th Cir. 2010) (unpublished).

> Juror 2 stated that her "strong values . . . might effect [sic] how I would come to a conclusion."  When asked whether she would "have a hard time weighing the facts in a case like [this] and [examining] the testimony and applying the law to it," Juror 2 answered "I honestly am not sure, but I think that I would. . . . I really don't know."  The voir dire statements by Juror 2 are ambiguous. But as the Supreme Court noted in *Patton v. Yount*, ambiguous testimony "is not unusual on voir dire examination." 467 U.S. at 1039, 104 S.Ct. 2885. . . . Although the statements made by Juror 2 hinted at possible bias against Seigfried, Juror 2 never explicitly stated that she could not be an impartial juror.

*Id.* (formatting altered).  *See also Irvin v. Dowd*, 366 U.S. 717, 723 (1961) ("To hold that the mere existence of any preconceived notion as to guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard."); *Virgil v. Dretke*, 446 F.3d 598, 609 (same); *Torres v. Thaler*, 395 Fed.Appx. 101, 2010 WL 3681021, at *5 ("Gorman's statements at the bench did not expressly indicate a clear prejudice.  He said he thought his experiences would affect his impartiality and that he would 'probably' be more for the State, but unlike the *Virgil* jurors, none of Gorman's responses definitively showed he would not be impartial.").

For all the foregoing reasons, and to the extent that the state habeas court's ruling can be construed as a finding of no actual bias, Lumpkin is entitled to summary judgment. Under § 2254(e)(1), the state habeas court's factual determination regarding venire member 56's alleged bias is entitled to the presumption of correctness, and Nunez has not rebutted that presumption with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Brown v. Vannoy*, No. 2:18-CV-1544, 2019 WL 5624503, at *5. Additionally, he has not demonstrated that the state habeas court's ruling was "based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d).  It is recommended that Court grant Lumpkin's Motion for Summary Judgment on this issue.

**D.   Nunez's Ineffective Assistance of Counsel Claims**.  As already noted above, Nunez asserts that his counsel provided him with ineffective assistance by:

(1)   failing to object to the above-referenced instances of prosecutorial misconduct;

(2)   failing to object when his Confrontation Clause rights were violated;

(3)   failing to strike a biased juror;

(4)   failing to seek a new jury pool when a venire member made comments during voir dire that biased the whole pool against him;

(5)   introducing inadmissible extraneous offense evidence against him;

(6)   failing to present any mitigating evidence at the punishment phase of the trial;

(7)   failing to require the trial court to make an outcry witness designation.  Dkt. No. 1 at 6; Dkt. No. 11 at 2, 4-20.

The Court will address each of these claims, although not necessarily in the order presented.

**(D)(1) Nunez's First Ineffective Assistance of Counsel Claim**.  Nunez argues that his counsel provided ineffective assistance by failing to object when the prosecution engaged in misconduct.  More specifically, he claims that they should have objected when the prosecution:

(a)   told the jury that S.L. was so traumatized by the abuse that she had Post-Traumatic Stress Disorder ("PTSD") and was suicidal, even though there was no evidence in the record to support these claims;

(b)    vouched for the veracity of the complainants multiple times;

(c)    told the jury, without foundation, that he was a pedophile, a predator, a liar, and "not like the rest of us[;]"

(d)    asked the jury to "send a message" to Cameron County and the State of Texas that pedophiles are not tolerated;

(e)    told the jury that he had not shown remorse.  Dkt. No. 1 at 6; Dkt. No. 11 at 2, 12-16; Dkt. No. 20 at 17.

**(D)(1)(a) Nunez's First Ineffective Assistance of Counsel Claim Based Upon the Prosecution's Alleged Misconduct**.  With respect to ineffective assistance of counsel claim (1)(a) ("IAC Claim (1)(a)"), Nunez asserts that his counsel provided ineffective assistance by failing to object when the prosecution told the jury that S.L. was so traumatized by his abuse that she was suicidal and had PTSD.  Dkt. No. 1 at 6 (stating that his counsel provided ineffective assistance by failing to object to *all* instances of prosecutorial misconduct identified in his Petition); Dkt. No. 11 at 12-13 (same); Dkt. No. 20 at 17 (same).  He states that the prosecution's comments here were improper because there was no evidence in the record to support these claims about her emotional state.  Dkt. No. 1 at 6: Dkt. No. 11 at 2, 13-16 (citing Dkt. No. 14-5 at 29); Dkt. No. 20 at 2-5 (citing Dkt. No. 14-5 at 29).

Nunez raised this claim in his state habeas application.  Dkt. No. 14-35 at 15, 43.  The state habeas court found that all of Nunez's ineffective assistance of counsel claims lacked merit in its Habeas Order, but it did not mention this specific claim.  Dkt. No. 14-34 at 15-17.  The TCCA also did not mention this specific claim because it denied Nunez's application "without written order on findings of trial court without hearing and on the court's independent review of the record."  Dkt. No. 14-24 at 1 (emphasis added).

Even reviewing Nunez's instant claim de novo and presuming that it was not

adjudicated on the merits in his state habeas proceedings, his claim still fails.  As already discussed at length above, Nunez's characterization of the record is incorrect.  The prosecutor's remarks only referenced evidence that was already in the record.  *See supra* at pgs. 25-28.  Accordingly, Nunez's counsel did not provide ineffective assistance by failing to object to the prosecution's remarks.  Correspondingly, because the prosecution's remarks were not improper, Nunez cannot show that he was prejudiced by his counsel's failure to object to the remarks.  *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (noting that counsel are not required to make futile motions or frivolous objections); *Green v. Johnson*, 160 F.3d 1029, 1037 ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness").  Nunez's IAC Claim (1)(a) is without merit and is subject to summary judgment.

**(D)(1)(b).  Nunez's Second Ineffective Assistance of Counsel Claim Based Upon the Prosecution's Alleged Misconduct**.  With respect to ineffective assistance of counsel claim (1)(b) ("IAC Claim (1)(b)"), Nunez asserts that his counsel provided ineffective assistance by failing to object when the prosecution vouched for the veracity of the complainants multiple times.  Dkt. No. 1 at 6 (stating that his counsel provided ineffective assistance by failing to object to *all* instances of prosecutorial misconduct identified in his Petition); Dkt. No. 11 at 12-13 (same); Dkt. No. 20 at 17 (same).  Nunez does not elaborate on this claim, or the underlying prosecutorial misconduct claim in any of his submissions.  *See generally* Dkt. No. 1, Dkt. No. 11, Dkt. No. 20.  Further, although his Memorandum in Support incorporates the arguments that he made in his state habeas application by reference (*see* Dkt. No. 11 at 15), Nunez's state habeas application and memorandum in support of that application do not allege that the

prosecution improperly vouched for the veracity of the complainants.  *See* Dkt. No. 14-35 at 9-24, 30-57.

Because Nunez provides no facts to support IAC Claim (1)(b), it is vague, conclusory, and fails to show a violation of his federal rights.[23]  Accordingly, IAC Claim (1)(b) is subject to summary judgment.  *See Blackledge v. Allison*, 431 U.S. 63, 74 ("[T]he presentation of conclusory allegations unsupported by specifics is subject to summary dismissal."); *Schlang v. Heard*, 691 F.2d 796, 799 ("Mere conclusory statements do not raise a constitutional issue in a habeas case."); *Ross v. Estelle*, 694 F.2d 1008, 1011 ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").  *See also Psara Energy, Ltd. v. Space Shipping, Ltd.*, 427 F. Supp. 3d 858, 859 (noting that an argument not timely or adequately briefed before the United States Magistrate Judge was abandoned) (citing *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, at 190 and *DIRECTV, Inc. v. Budden*, 420 F.3d 521, at 525–26).

**(D)(1)(c) Nunez's Third Ineffective Assistance of Counsel Claim Based Upon the Prosecution's Alleged Misconduct.**  With respect to ineffective assistance of counsel claim (1)(c) ("IAC Claim (1)(c)"), Nunez asserts that his counsel provided ineffective assistance by failing to object when the prosecution made prejudicial remarks about him without evidentiary foundation.  Dkt. No. 1 at 6 (stating that his counsel provided ineffective assistance by failing to object to *all* instances of prosecutorial misconduct identified in his Petition); Dkt. No. 11 at 12-13 (same); Dkt. No. 20 at 17

---

[23] Although Lumpkin does not raise the issue (*see generally* Dkt. No. 16), Nunez has also likely failed to exhaust this claim by failing to raise it in state habeas proceedings.

(same).  Specifically, he contends that his counsel should have objected when the prosecution improperly told the jury, without evidentiary foundation, that he was a pedophile, a predator, a liar, and "not like the rest of us."  *See* Dkt. No. 1 at 6; Dkt. No. 11 at 2-3, 13-16; Dkt. No. 20 at 3-5.

Nunez raised this claim in his state habeas application.  Dkt. No. 14-35 at 15, 43.  The state habeas court found that all of Nunez's ineffective assistance of counsel claims, including this one, lacked merit in its Habeas Order.  Dkt. No. 14-34 at 15-17.  More specifically, the state habeas court stated:

> with respect to failing to object to the State's improper closing arguments, trial counsel knew the lead prosecutor well and had witnessed him use this same type of rhetoric and bombast in other, similar, cases.  In those cases, this very same tactic worked against the State and turned off the jury, which often lead to acquittals or lower sentences.  Trial counsel felt that to be the case here as well.

*Id.* at 17.  The TCCA denied Nunez's application "without written order on findings of trial court without hearing and on the court's independent review of the record."  Dkt. No. 14-24 at 1 (emphasis added).

When a § 2254 petitioner's ineffective assistance of counsel claim has been denied on the merits in state habeas proceedings, federal courts must review his claim under the "'doubly deferential'" standards of both *Strickland* and § 2254(d).  *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).  The "pivotal question" then is not "whether defense counsel's performance fell below *Strickland's* standard," but whether "the state court's application of the *Strickland* standard was unreasonable."  *Harrington v. Richter*, 562 U.S. 86, 101; *JOSE MANUEL FUENTES, TDCJ No. 02126189, Petitioner, v. BOBBY LUMPKIN, Dir., Texas Dep't of Crim. Just., Corr. Institutions Div., Respondent.*, No. W-20-CV-1094-ADA, 2022 WL

1445392, at *4–5 (W.D. Tex. May 6, 2022) (same).  Federal courts consider ineffective assistance of counsel claims mixed questions of law and fact; and, therefore, must analyze them under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1).  *Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).

The affidavits submitted by both of Nunez's attorneys stated that they chose, as a matter of strategy, not to object to the prosecution's statements because they believed, based upon their own experience, that such bombastic comments would backfire.  *See* Dkt. No. 14-34 at 7, 12.  This is a reasonable position, and this Court may not second-guess the reasonable, informed strategic choices of counsel.  *Mejia v. Davis*, 906 F.3d 307, 316-19 (5th Cir. 2018); *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017) ("'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'") (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052).  Further, as already detailed at length above, the prosecution's comments were amply supported by the record evidence and thus could not be unfairly prejudicial.  *See supra* at pgs. 30-37.  Accordingly, Nunez's counsel did not provide ineffective assistance by failing to object to the prosecution's remarks.  *See Johnson v Cockrell*, 306 F.3d 249, 255 (noting that counsel are not required to make futile motions or frivolous objections); *Green v. Johnson*, 160 F.3d 1029, 1037 ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness").  Correspondingly, because the prosecution's remarks were not unfairly prejudicial or unsupported by evidence, Nunez cannot show that he was prejudiced by his counsel's failure to object to the remarks.  Nunez has not demonstrated that the state habeas court's ruling "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. §

2254(d)(1).  His IAC Claim (1)(c) is without merit and is subject to summary judgment.

**(D)(1)(d) Nunez's Fourth Ineffective Assistance of Counsel Claim Based Upon the Prosecution's Alleged Misconduct**.  With respect to ineffective assistance of counsel claim (1)(d) ("IAC Claim (1)(d)"), Nunez asserts that his counsel provided ineffective assistance by failing to object when the prosecution improperly asked the jury to send the State of Texas and Cameron County a message when sentencing him. Dkt. No. 1 at 6 (stating that his counsel provided ineffective assistance by failing to object to *all* instances of prosecutorial misconduct identified in his Petition); Dkt. No. 11 at 12-13 (same); Dkt. No. 20 at 17 (same).   Nunez raised this claim in his state habeas application.  Dkt. No. 14-35 at 15, 43-49.  The state habeas court found that all of Nunez's ineffective assistance of counsel claims lacked merit in its Habeas Order.  Dkt. No. 14-34 at 17.  Still, it is not clear if it considered this specific claim when it held that neglecting to object to the prosecution's alleged misconduct failed to constitute ineffective assistance.[24] The TCCA also did not mention this specific claim because it denied Nunez's application "*without written order* on findings of trial court without hearing and on the court's independent review of the record."  Dkt. No. 14-24 at 1 (emphasis added).

Nevertheless, even presuming that Nunez's instant claim was not adjudicated on the merits in his state habeas proceedings, and reviewing it de novo, his claim still fails.

---

[24]   Again, in rejecting Nunez's ineffective assistance claims based on the alleged failure to challenge prosecutorial misconduct, the state habeas court stated:

> with respect to failing to object to the State's improper closing arguments, trial counsel knew the lead prosecutor well and had witnessed him use this same type of rhetoric and bombast in other, similar, cases.  In those cases, this very same tactic worked against the State and turned off the jury, which often lead to acquittals or lower sentences.  Trial counsel felt that to be the case here as well.

Dkt. No. 14-34 at 17.

As already discussed above, the prosecution's "send a message" argument was made in *response* to the remarks Nunez's attorney made during the punishment phase.[25]   In Texas, "proper closing argument by the prosecution in criminal trials includes the following: (1) summation of the evidence; (2) reasonable deduction drawn from the evidence; (3) answer to opposing counsel's argument; and (4) pleas for law enforcement." *Eldrige v. Dir. TDCJ - CID*, No. 7:18-CV-00163-O-BP, 2019 WL 5580130, at *5 (citing *Wesbrook v. State*, 29 S.W.3d 103, 115).

Because the prosecution's argument was made during the punishment phase, the jury had already found Nunez guilty of "aggravated sexual assault of a child" and "indecency with a child by sexual contact."  Dkt. No. 14-35 at 5-6.  The argument Nunez's attorney made to the jury, then, qualifies both as a plea for law enforcement and an answer to opposing counsel's argument.  As such, the prosecution's argument falls well within "the approved general areas of argument" in Texas.  *Eldrige v. Dir. TDCJ - CID*, No. 7:18-CV-00163-O-BP, 2019 WL 5580130, at *5.  *See also United States v. Ruiz*, 987 F.2d 243, 248–49 ("It is well-settled that, unless the prosecutor intended to inflame, 'an appeal to the jury to act as the conscience of the community is not impermissible.'") (quoting *United States v. Phillips,* 664 F.2d 971, 1030; *United States v. Valas*, 822 F.3d 228, 243 (same)).  Consequently, Nunez's counsel did not provide ineffective assistance by failing to object to the prosecution's argument under Texas law.  And, he has identified no authority requiring this Court to hold that his counsel's failure to object to the prosecution's argument violated federal law.  *See generally* Dkt. Nos. 1, 11, and 20.  His

---

[25]  During the punishment phase, Nunez's attorney repeatedly suggested that the jury need not worry about Nunez reoffending in their community, if they gave him a "low amount of jail time," because he would likely be removed from this country after he served his sentence.  Dkt. No. 14-6 at 25.

IAC Claim (1)(d) is without merit and is subject to summary judgment.

Alternatively, presuming that his instant claim was adjudicated on the merits in his state habeas proceedings, Nunez has failed to show that he is entitled to federal habeas relief. Federal courts consider ineffective assistance of counsel claims mixed questions of law and fact; and, therefore, must analyze them under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *Gregory v. Thaler*, 601 F.3d 347, 351. Under § 2254(d)(1), Nunez must show that the state habeas court's denial of his claim "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). He has not met this burden.

The affidavits submitted by both of Nunez's attorneys stated that, based upon their experience, they strategically chose not to object to the prosecution's statements because they believed that such bombastic comments would backfire. *See* Dkt. No. 14-34 at 7, 12. This is a reasonable position, and this Court may not second-guess the reasonable, informed strategic choices of counsel. *Mejia v. Davis*, 906 F.3d 307, 316-19; *Rhoades v. Davis*, 852 F.3d 422, 434 ("'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'") (quoting *Strickland*, 466 U.S. at 690).

Accordingly, Nunez has not shown that his counsel provided ineffective assistance by failing to object to the prosecution's remarks. *Johnson v Cockrell*, 306 F.3d 249, 255 (noting that counsel are not required to make futile motions or frivolous objections); *Green v. Johnson*, 160 F.3d 1029, 1037 ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness"). Correspondingly, Nunez has not shown that he was prejudiced by his counsel's failure to

object to the remarks.  Nunez has not demonstrated that the state habeas court's ruling "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  His IAC Claim (1)(d) is without merit and is subject to summary judgment.

**(D)(1)(e) Nunez's Fifth Ineffective Assistance of Counsel Claim Based Upon the Prosecution's Alleged Misconduct.**  With respect to ineffective assistance of counsel claim (1)(e) ("IAC Claim (1)(e)"), Nunez asserts that his counsel provided ineffective assistance by failing to object when the prosecution improperly commented on his failure to testify by telling the jury that he had shown no remorse for his actions.  Dkt. No. 1 at 6 (stating that his counsel provided ineffective assistance by failing to object to *all* instances of prosecutorial misconduct identified in his Petition); Dkt. No. 11 at 12-13 (same); Dkt. No. 20 at 17 (same).  Nunez did not clearly raise this claim in his state habeas application.  Dkt. No. 14-35 at 15, 43-49.[26]  Regardless, even if the Court ignores this fact and presumes that his claim is properly before it, his claim lacks merit.

As already noted above, Nunez's underlying prosecutorial misconduct claim is contradicted by the record.  *See supra* at pgs. 41-44.  The prosecution did not violate Nunez's right to remail silent during the punishment stage of the trial because it was not commenting on Nunez's failure to testify during the punishment phase of his trial.  Rather, the prosecution was commenting on Nunez's testimony and demeanor during the guilt/innocent stage of his trial.  Accordingly, because Nunez's underlying prosecutorial misconduct claim is contradicted by the record, Nunez cannot show that his counsel

---

[26]  In his state habeas proceedings, Nunez contends that the prosecution improperly referenced his lack of remorse (Dkt. No. 14-35 at 48), but he does not specifically state that his counsel should have objected.  Dkt. No. 14-35 at 15, 43-45.

provided ineffective assistance by failing to object to the alleged misconduct.  Under either de novo review or AEDPA deference, Nunez has not shown an entitlement to relief.  His IAC Claim (1)(e) is without merit and is subject to summary judgment.

**(D)(2) Nunez's Ineffective Assistance of Counsel Claim Based Upon the Alleged Violation of his Confrontation Clause Rights**.  With respect to ineffective assistance of counsel claim (D)(2) ("IAC Claim (D)(2)"), Nunez asserts that his counsel provided ineffective assistance by failing to object when the trial court violated his Confrontation Clause rights.  Specifically, he states that his counsel should have objected when the trial court allowed Officer Sam Lucio to testify about a statement that a Tropical Texas representative allegedly made to S.L.'s mother.  Dkt. No. 1 at 6; Dkt. No. 11 at 4, 6-7; Dkt. No. 20 at 10-12.  Nunez claims that, according to Officer Lucio, M.L. told him, that a Tropical Texas representative told her, that Nunez was "'the one that abused [her] daughter.'"  Dkt. No. 11 at 6 (brackets in original).  Nunez argues that allowing the jury to hear the Tropical Texas representative's out-of-court statement violated his rights because the statement directly implied that he was guilty of the crime charged and he did not have the opportunity to question the Tropical Texas representative.  *Id.* at 17 (citing "RR4: 71," which can be found at Dkt. No. 14-4 at 71); Dkt. No. 20 at 5 (same).

Nunez raised this ineffective assistance of counsel claim in his state habeas application.  Dkt. No. 14-35 at 14, 32, 35-36.  The state habeas court found the claim lacked merit.  Dkt. No. 14-34 at 16.  More specifically, the state habeas court found that defense counsel reasonably chose not to object to Officer Lucio's testimony.  *Id.* ("[W]ith respect to failing to object to the investigator's testimony, trial counsel omitted his objection so as not to give that statement more credibility or the appearance of credibility by highlighting it with an objection.").  The TCCA denied Nunez's application "without

written order on findings of trial court without hearing and on the court's independent review of the record." Dkt. No. 14-24 at 1 (emphasis added).

As noted above, when a § 2254 petitioner's ineffective assistance of counsel claim has been denied on the merits in state habeas proceedings, federal courts must review his claim under the "'doubly deferential'" standards of both *Strickland* and § 2254(d). *Woods v. Etherton*, 578 U.S. 113, 117 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190). The "pivotal question" then is not "whether defense counsel's performance fell below *Strickland's* standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. 86, 101. Additionally, federal courts consider ineffective assistance of counsel claims mixed questions of law and fact; and, therefore, must analyze them under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *Gregory v. Thaler*, 601 F.3d 347, 351.

The affidavits submitted by both of Nunez's attorneys stated that they chose, as a matter of strategy, not to object to Officer Lucio's testimony. Dkt. No. 14-34 at 6, 10. Among other things, Nunez's lead attorney stated that he did not think that Officer Lucio's testimony was particularly helpful to the State's case so objecting to it would have served no useful purpose. *Id.* at 10. Nunez's other attorney stated that he did not want to highlight or add credibility to Officer Lucio's testimony by objecting to it. *Id.* at 6.

The attorneys' strategic choices here were not unreasonable in light of the fact that Officer Lucio's testimony did not violate Nunez's Confrontation Clause rights. As addressed at length above, the state habeas court found that Officer Lucio's testimony concerned a "non-testimonial" statement procured for the purpose of "establishing a timeline," and not for the purpose of establishing that Nunez was "the perpetrator involved in the investigation." Dkt. No. 14-34 at 18. This finding is supported by the

record.  *See supra* at pgs. 48-49.  Accordingly, because Nunez's underlying Confrontation Clause claim is without merit, Nunez has not shown: (1) that his counsel provided ineffective assistance by failing to object to alleged Confrontation Clause violation; (2) that the state habeas court's application of the *Strickland* standard was unreasonable; or (3) that the state habeas court's resolution of his instant claim was otherwise unreasonable under § 2254(d)(1).  Nunez has not shown an entitlement to relief.  His IAC Claim (D)(2) is without merit and is subject to summary judgment.

**(D)(3) Nunez's Ineffective Assistance of Counsel Claim Based Upon His Counsel's Failure to Strike an Allegedly Biased Juror**.  With respect to ineffective assistance of counsel claim (D)(3) ("IAC Claim (D)(3)"), Nunez asserts that his counsel provided ineffective assistance by failing to strike venire member 56.  Dkt. No. 1 at 6; Dkt. No. 11 at 4, 7-8; Dkt. No. 20 at 12-13.  As discussed above, he contends that venire member 56 went on to become juror number 12 and her participation in his trial violated his right to an impartial jury.

Nunez raised this ineffective assistance of counsel claim in his state habeas application.  Dkt. No. 14-35 at 14, 32, 36-37.  The state habeas court found the claim lacked merit.  Dkt. No. 14-34 at 16.  More specifically, the state habeas court found that defense counsel reasonably chose not to strike venire member 56 because they believed that she "could help make the case that children often make false outcries."  *Id*.  The TCCA then denied Nunez's application "without written order on findings of trial court without hearing and on the court's independent review of the record."  Dkt. No. 14-24 at 1 (emphasis added).

As noted above, when a § 2254 petitioner's ineffective assistance of counsel claim has been denied on the merits in state habeas proceedings, federal courts must review his

claim under the "'doubly deferential'" standards of both *Strickland* and § 2254(d). *Woods v. Etherton*, 578 U.S. 113, 117 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190). The question then is not "whether defense counsel's performance fell below *Strickland's* standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. 86, 101. Additionally, federal courts consider ineffective assistance of counsel claims mixed questions of law and fact; and, therefore, must analyze them under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *Gregory v. Thaler*, 601 F.3d 347, 351.

The affidavits submitted by both of Nunez's attorneys stated that they chose, as a matter of strategy, not to strike venire member 56. Dkt. No. 14-34 at 6, 10. Both attorneys explained their position by noting that, as husbands of educators, they were aware that teachers are in a better position than most to know that children do not always tell the truth and sometimes make false allegations.

> I believe that educators better than most people do know that children can be untruthful. As a former educator and the husband of an educator, I am aware that educators have to deal with false allegations against themselves or their fellow educators frequently. Educators also hear from students about all sorts of excuses as to why something happened or didn't happen. In short, teachers know that children lie. We felt that to be the case with this venireperson and we believed that they could help make the case that children to make false outcries.

*Id.* at 10 (errors in original); *see also id.* at 6 ("[A]s the husband of an educator . . . I am aware that educators have to deal with false allegations against themselves or their fellow educators frequently. . . . [W]e believed that [venire member 56] could help make the case that children [] make false outcries.").

The attorneys' strategic choices here were not unreasonable in light of the fact that the record does not show that venire member 56 was actually or impliedly biased against

him.  As discussed at length above, the state habeas court found that although venire member 56 did vacillate regarding her ability to be fair, her "familiarity with the victim" was "attenuated enough" to have an insignificant impact.  Dkt. No. 14-34 at 18 (holding that seating of venire member 56 had a "negligible effect on the fairness and impartiality of the jury").  This finding is supported by the record.  *See supra* at pgs. 50-56.  Accordingly, because Nunez's underlying juror bias claim is without merit, Nunez has not shown: (1) that his counsel provided ineffective assistance by failing to strike venire member 56; (2) that the state habeas court's application of the *Strickland* standard was unreasonable; or (3) that the state habeas court's resolution of his instant claim was otherwise unreasonable under § 2254(d)(1).  Nunez has not shown an entitlement to relief.  His IAC Claim (D)(3) is without merit and is subject to summary judgment.

**(D)(4) Nunez's Ineffective Assistance of Counsel Claim Based Upon His Counsel's Failure to Seek a New Jury Pool**.  With respect to ineffective assistance of counsel claim (D)(4) ("IAC Claim (D)(4)"), Nunez contends that his defense counsel provided ineffective assistance by failing to seek a new jury pool when a venire member made prejudicial comments during voir dire.  Dkt. No. 1 at 6; Dkt. No. 11 at 4-6; Dkt. No. 20 at 9-10.  Nunez asserts, more specifically, that venire member 21's comments tainted the pool and denied him his right to an unbiased jury.  He also contends that his counsel's failure to seek a new pool ruined any chance that the jury would presume him innocent until proven guilty.  *Id*.

Nunez raised this ineffective assistance of counsel claim in his state habeas application.  Dkt. No. 14-35 at 14, 32-34.  The trial court found the claim lacked merit.  Dkt. No. 14-34 at 16.  The trial court noted that Nunez's counsel did approach the bench seeking to "bust the panel[.]"  *Id*.  However, because the trial court had offered a "curative

measure of having the State refrain from probing further to prevent potentially tainting the [jury pool]," the court found that it was reasonable for defense counsel to accept the court's curative measure. *Id.* The TCCA then denied Nunez's application "without written order on findings of trial court without hearing and on the court's independent review of the record." Dkt. No. 14-24 at 1 (emphasis added).

When a § 2254 petitioner's ineffective assistance of counsel claim has been denied on the merits in state habeas proceedings, federal courts must review his claim under the "'doubly deferential'" standards of both *Strickland* and § 2254(d). *Woods v. Etherton*, 578 U.S. 113, 117 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190). The question then is not "whether defense counsel's performance fell below *Strickland's* standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. 86, 101. Additionally, federal courts consider ineffective assistance of counsel claims mixed questions of law and fact; and, therefore, must analyze them under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *Gregory*, 601 F.3d 347, 351.

Determining whether Nunez has met his burden requires this Court to look at venire member 21's comments and the response of Nunez's counsel to those comments. Venire member 21 stated that she knew one of the prosecuting attorneys, Daniel Lopez, because she was a police officer and had previously "dealt with him on cases." Dkt. No. 14-2 at 27. When the other prosecutor asked her if she could be fair and follow the law, venire member 21 stated, "I have my own opinions." *Id.* Venire member 21 also stated that she knew three or four other witnesses for the prosecution. *Id.* at 29. The prosecution asked her if knowing the witnesses could prevent her from following the law or giving Nunez a fair trial. Venire member 21 responded that it would, stating: "Because we always

work very hard on our cases, and I work a lot of sexual assault cases with them.  I believe that we don't just work them just so we can lose a case.  We have a . . . we have arrested them for a reason." *Id.*

Immediately after this exchange, Nunez's attorneys asked to approach the bench and stated that venire member 21 "may have tainted the whole pool."  Dkt. No. 14-2 at 29-30.[27]  The trial judge asked why and stated that he had not heard "completely" what venire member 21 had said.  *Id.* at 30.  Nunez's attorney, Alex Dominguez, responded by stating, "She's saying . . . vouching for these officers saying they work really hard on all their cases to make sure they can prosecute."  *Id.*  Nunez's other attorney, Ismael Hinojosa, added that venire member 21 was suggesting that, if these law enforcement witnesses brought the case to court, "it must be true."  *Id.*  Dominguez then suggested that the court immediately remove venire member 21 from the panel, but the trial judge declined.  Instead, the trial judge accepted the prosecution's promise not to question venire member 21 further and directed the prosecution to "stay away" from venire member 21.  Subsequently, before the start of trial, venire member 21 was stricken from the jury panel.  *Id.* at 100, 145; Dkt. No. 14-8 at 62.

Lumpkin contends that Nunez has not met his burden under AEDPA.  Dkt. No. 16 at 16-17.  Lumpkin asserts that Nunez's counsel did not perform deficiently because, although they initially attempted to challenge the jury as potentially corrupted, their choice to accept the trial court's curative measure was strategically reasonable.  *Id.*

---

[27]  The voir dire transcript appears to have a typographical error.  The transcript states that "the court" stated that venire member 21 "may have tainted the whole pool."  Dkt. No. 14-2 at 29-30.  It is more likely that Nunez's counsel made this statement after the court told them that they could approach the bench.  It is more likely that Nunez's counsel made this statement because immediately after the statement was uttered, the court asked "why?"  The court's question "why" would be nonsensical if the court itself had made the statement.  Regardless, even presuming the court made the statement, Nunez has not met his burden for the reasons provided below.

Lumpkin additionally asserts that, even presuming his counsel performed deficiently, Nunez has not shown that he was prejudiced by their performance. *Id.* at 17. Lumpkin avers that this is because: (1) the trial court instructed the jury that Nunez was entitled to the presumption of innocence; (2) Nunez has not shown that venire member 21's comments swayed the jury in any way; and (3) any errors on the part of Nunez's counsel must be considered harmless given that the prosecution presented overwhelming evidence of Nunez's guilt. *Id.*

The record confirms that, before venire member 21 made the above-referenced comments, the trial court had already instructed the venire members that Nunez was entitled to an unbiased jury and a presumption of innocence. Dkt. No. 14-2 at 17-23. After venire member 21 made her comments, the seated jurors affirmed that: (1) they could follow and apply the law; (2) they could be fair and impartial; and (3) they could give Nunez a fair, impartial trial even though he was charged with inflammatory crimes involving the sexual abuse of children. *Id.* at 33-39, 145.[28] Additionally, when asked, the seated jurors all confirmed that they afford Nunez the presumption of innocence. *Id.* at 17, 145.

In this case, the trial court judge reviewing Nunez's state habeas application, Judge Juan A. Magallanes, was also the judge who presided over his voir dire and trial. *See* Dkt. No. 14-2 at 1 (noting that Judge Juan A. Magallanes presided over Nunez's voir dire); Dkt. No. 14-3 at 1 (noting that Judge Juan A. Magallanes presided over Nunez's trial); Dkt. No. 14-34 at 2 (noting that Judge Juan A. Magallanes presided over Nunez's trial and state

---

[28] After all unsuitable venire members were removed from the pool, the pool consisted of venire members 10, 13-16, 18-20, 22-23, 27, 30, 32-35, 39, 41-42, 44-48, 51-53, 55-57. Dkt. No. 14-2 at 145.

habeas proceedings).  In ruling upon Nunez's instant claim, Judge Magallanes had the benefit of being present when venire member 21 made her comments, and he had the benefit of being present when the seated jurors confirmed that they could afford Nunez the presumption of innocence, give him a fair, unbiased trial, and follow the law.  Judge Magallanes was also present when Nunez's attorneys approached the bench, summarized venire member 21's comments, and made their argument that venire member 21 may have tainted the jury pool.  His decision to deny Nunez's instant claim contained the implicit factual determinations that: (1) venire member 21's comments had not tainted the jury; and (2) tainting the jury was avoided by preventing further questioning of venire member 21 in front of the panel.

A state habeas court's factual determinations are entitled to the presumption of correctness unless rebutted by clear and convincing evidence.  *Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (citing 28 U.S.C. § 2254(e)(1)).  The presumption applies "not only to explicit findings of fact but 'also . . . to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'"  *Id.* (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001).  "'The presumption is especially strong when the state habeas court and the trial court are one in the same[.]'"  *Id.* (quoting *Clark v. Johnson*, 202 F.3d 760, 764.  *See also Young v. Dretke*, 356 F.3d 616, 628–29 (5th Cir. 2004) ("As a federal habeas court, we are bound by the state habeas court's factual findings, both implicit and explicit.").

Nunez has not rebutted Judge Magallanes's implicit factual determinations with clear and convincing evidence, nor has he shown that Judge Magallanes's application of clearly established law to those facts was unreasonable under § 2254(d)(1).  An unreasonable application of law is not the same as a merely incorrect application of law.

*Slater v. Davis*, No. 4:14-CV-3576, 2017 WL 1194374, at *4 (S.D. Tex. Mar. 30, 2017) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13). Consequently, "a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable." *Id.* (citing *Williams*, 529 U.S. 362, 409–11). An application of law is objectively unreasonable if fair-minded jurists could not disagree that the application was incorrect. *Id.* (citing *Harrington*, 562 U.S. 86, 101).

Nunez has failed to show that fair-minded jurists could not disagree regarding the correctness of Judge Magallanes's decision. This is because Nunez has not shown that his counsel's strategic decision to accept Judge Magallanes's "curative measure" permeated his entire trial with obvious unfairness.

> An attorney's actions during voir dire are considered to be a matter of trial strategy. A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be "so ill chosen that it permeates the entire trial with obvious unfairness".

*Teague v. Scott*, 60 F.3d 1167, 1172–73 (5th Cir. 1995) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)); *See also Seigfried v. Greer*, 372 F. App'x 536, 540 (same). Because fair-minded jurists could disagree on the correctness of Judge Magallanes's decision, this Court may not grant Nunez federal habeas relief. *See id.* (citing *Harrington*, 562 U.S. 86, 101).

**(D)(5) Nunez's Ineffective Assistance of Counsel Claim Based Upon His Counsel's Introduction of Inadmissible Extraneous Evidence Against Him**. With respect to ineffective assistance of counsel claim (D)(5) ("IAC Claim (D)(5)"), Nunez argues that his counsel provided him with ineffective assistance by introducing inadmissible extraneous offense evidence against him during the guilt/innocence phase of his trial. Dkt. No. 1 at 6; Dkt. No. 11 at 4-5, 9-10; Dkt. No. 20 at 13-14. More specifically,

Nunez claims that: (1) his counsel elicited testimony about his past offenses from state witness Sara Cortez during cross examination; (2) the evidence concerned his prior arrests for working with false identification documents and for driving while under the influence; (3) the evidence reflected poorly on his character; (4) in eliciting such testimony, his counsel provided prejudicial, ineffective assistance.  Nunez also claims that the state habeas court did not properly adjudicate this claim.  He states that his claim is focused on the testimony elicited from the state's witness, whereas the state habeas court found that it was not ineffective assistance to elicit testimony from Nunez himself regarding his prior offenses.  *Id.*

Nunez raised his instant ineffective assistance of counsel claim in his state habeas application.  Dkt. No. 14-35 at 14, 32, 38-39.  The state habeas court found the claim lacked merit.  Dkt. No. 14-34 at 16-17.  More specifically, the state habeas court stated:

> with respect to failing to object to extraneous acts by Applicant revealed through his testimony trial counsel intended to show the jury, through App1icant's testimony that he would be coming completely clean before the jury and thus demonstrate that he has nothing to hide.  This strategy included informing the jury about his prior criminal record and arguing that when he was guilty, he pleaded guilty.  Trial counsel has had prior success with this strategy in numerous cases including cases with charges as serious as those this defendant was facing.  All of this was discussed with Applicant beforehand, and he was in agreement with the strategy.

*Id.* at 16-17 (errors in original).  The TCCA then denied Nunez's application "without written order on findings of trial court without hearing and on the court's independent review of the record."  Dkt. No. 14-24 at 1 (emphasis added).

As noted above, when a § 2254 petitioner's ineffective assistance of counsel claim has been denied on the merits in state habeas proceedings, federal courts must review his claim under the "'doubly deferential'" standards of both *Strickland* and § 2254(d).  *Woods*, 578 U.S. 113, 117 (quoting *Cullen*, 563 U.S. 170, 190).  The question then is not

"whether defense counsel's performance fell below *Strickland's* standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. 86, 101.  Additionally, federal courts consider ineffective assistance of counsel claims mixed questions of law and fact; and, therefore, must analyze them under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1).  *Gregory*, 601 F.3d 347, 351.

The state habeas court's resolution of this claim is supported by the record.  The affidavits submitted by both of Nunez's attorneys stated that they chose, as a matter of strategy, to elicit testimony regarding Nunez's past offenses.  Dkt. No. 14-34 at 6, 11.  As his lead counsel explained, Nunez had chosen to take the stand.  Therefore, his character and prior offenses would be admissible.  Rather than try to hide these past offenses, it would be better for Nunez to show that, when he was actually guilty of a crime, he pleaded guilty.  *Id.* at 11.

> [D]efense counsel spoke extensively with the Defendant about trial strategy and expected testimony prior to the trial and to his taking the stand to testify on his own behalf.  Counsel prepared the Defendant that the State would attempt to impeach his character extensively since we had done the same to the State's chief witnesses.  Additionally, since we expected the Defendant to take the stand, the jury would hear not only about his criminal history but potentially his infidelity.  It was my believe that the defense needed a reason for one of his accusers to have such strong feelings about the Defendant that they would lie about the Defendant.  Since I knew of no disciplinary reasons to explain such animosity, the only one I could think of was that his former step-child held a grudge for the Defendant cheating on her mother.  It would make sense if the mother was angry and spoke of the infidelity with the daughter.  The jury needed to know why a child would say these things about the Defendant if no physical/sexual encounter took place.  It was our intent to show the jury, through defendant's testimony, that defendant would be forthcoming before the jury and show them that he has nothing to hide.  That included informing the jury about his prior convictions and arguing that when he was guilty, he pleaded guilty.  It also included being forthcoming about his non-exclusive sexual relationships.  Given the border community and the unrelated nature of his previous criminal cases, it was my belief that the jury would be able to see the

distinction.  All of this was discussed with defendant and the defendant was in agreement with the strategy.

*Id.*

The attorneys' strategic choices here were sound in light of the fact that Nunez had chosen to take the stand.  This is a reasonable position, and this Court may not second-guess the reasonable, informed strategic choices of counsel.  *Mejia v. Davis*, 906 F.3d 307, 316-19; *Rhoades v. Davis*, 852 F.3d 422, 434 ("'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'") (quoting *Strickland*, 466 U.S. at 690).  Further, although Nunez states that his counsel harmed him by eliciting testimony from Sara Cortez's regarding his past offenses, he cannot show that this was an ineffective or prejudicial strategy given that he also testified about his past offenses, stating that when he was guilty, he pleaded guilty.  Dkt. No. 14-4 at 168-170.  Accordingly, Nunez has not shown: (1) that his counsel provided ineffective assistance by eliciting testimony regarding his prior offenses; (2) that the state habeas court's application of the *Strickland* standard was unreasonable; or (3) that the state habeas court's resolution of his instant claim was otherwise unreasonable under § 2254(d)(1).  Nunez has not shown an entitlement to relief.  His IAC Claim (D)(5) is without merit and is subject to summary judgment.

**(D)(6) Nunez's Ineffective Assistance of Counsel Claim Based Upon His Counsel's Failure to Present Any Mitigation Evidence at the Punishment Phase of His Trial**.  With respect to ineffective assistance of counsel claim (D)(6) ("IAC Claim (D)(6)"), Nunez argues that his counsel provided him with ineffective assistance by failing to introduce mitigating evidence during the guilt/innocence phase of his trial.  Dkt. No. 1 at 6; Dkt. No. 11 at 5, 10-11; Dkt. No. 20 at 14-15.  More specifically, he claims that

his counsel not only failed to present mitigating evidence, but they also never investigated the matter.  *Id*.  Nunez contends that his counsel never asked him, his family, or his friends for mitigating evidence, or otherwise inquired into his past life experiences.  *Id*.

Nunez raised his instant ineffective assistance of counsel claim in his state habeas application.  Dkt. No. 14-35 at 14-15, 32, 40-41.  The state habeas court found the claim lacked merit.  Dkt. No. 14-34 at 16-17.  More specifically, the state habeas court stated, "with respect to failing to present mitigating evidence during the punishment phase, trial counsel was unable to substantiate any which could potentially benefit Applicant."  *Id*. at 17.  The TCCA then denied Nunez's application "without written order on findings of trial court without hearing and on the court's independent review of the record."  Dkt. No. 14-24 at 1 (emphasis added).

As noted above, when a § 2254 petitioner's ineffective assistance of counsel claim has been denied on the merits in state habeas proceedings, federal courts must review his claim under the "'doubly deferential'" standards of both *Strickland* and § 2254(d).  *Woods*, 578 U.S. 113, 117 (quoting *Cullen*, 563 U.S. 170, 190).  The question then is not "whether defense counsel's performance fell below *Strickland's* standard," but whether "the state court's application of the *Strickland* standard was unreasonable."  *Harrington*, 562 U.S. 86, 101.  Additionally, federal courts consider ineffective assistance of counsel claims mixed questions of law and fact; and, therefore, must analyze them under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1).  *Gregory*, 601 F.3d 347, 351.

The state habeas court's resolution of this claim is supported by the record.  The affidavits submitted by both of Nunez's attorneys stated that Nunez refused to discuss the topic and rejected the possibility that he could be found guilty.  Dkt. No. 14-34 at 6-7, 11-

12. As his lead counsel explained:

> counselors and defendant met prior to and during trial and would even eat lunch together. Defendant was informed that the State would make many arguments and character attacks on the Defendant. During those times, defendant was asked about his past and about possible mitigation evidence in the event that defendant was found guilty. Defendant never wanted to discuss or even consider the possibility that he could be found guilty. In fact, plea negotiations continued throughout the trial with the State and at one point during the trial an offer of 16 years or less TDC was made by the State and rejected out of hand by defendant. This despite his attorneys counselling him otherwise. Defense counsel did put on positive testimony about the Defendant's newfound religion. However, given that the Defendant was adamant about maintaining his innocence, he would not consider asking for mercy. Defense counsel was restricted in what it could argue on his behalf as far as mitigation. We had no reason to believe he suffered from any coercion, mental illness, alcoholism, or anything else that could explain a possible criminal action.

*Id.* at 11-12 (errors in original).

As noted above, this Court may not second-guess the reasonable, informed strategic choices of counsel. *Mejia*, 906 F.3d 307, 316-19; *Rhoades*, 852 F.3d 422, 434 ("'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'") (quoting *Strickland*, 466 U.S. at 690). Nunez argues that his counsel never attempted to obtain any mitigating evidence; therefore, they did not make a strategic choice. However, he has not shown this to be the case, nor has he otherwise demonstrated this his counsel's choice fell below an objective standard of reasonableness. Furthermore, even presuming that he could show that his counsel was ineffective, he has not shown how that ineffectiveness caused him prejudice. He has not identified any mitigating evidence for the Court to consider, nor otherwise provided evidence to contradict the statements made by his counsel in their affidavits.

Accordingly, Nunez has not shown: (1) that his counsel provided ineffective assistance by failing to look for or present mitigating evidence; (2) that the state habeas

court's application of the *Strickland* standard was unreasonable; or (3) that the state habeas court's resolution of his instant claim was otherwise unreasonable under § 2254(d)(1). Nunez has not shown an entitlement to relief. His IAC Claim (D)(6) is without merit and is subject to summary judgment.

**(D)(7) Nunez's Ineffective Assistance of Counsel Claim Based Upon His Counsel's Failure to Require the Trial Court to Make an Outcry Witness Designation**. With respect to ineffective assistance of counsel claim (D)(7) ("IAC Claim (D)(7)"), Nunez asserts that his counsel provided him with ineffective assistance when they failed to require the trial court to make an outcry witness designation. Dkt. No. 1 at 6; Dkt. No. 11 at 1-2, 11-12; Dkt. No. 20 at 15-16. Nunez claims that this designation was required pursuant to Article 38.072 of the Texas Code of Criminal Procedure. Dkt. No. 11 at 11; Dkt. No. 20 at 15. As a result of his counsel's failure, Nunez claims that the jury heard a lot of irrelevant, repetitive hearsay testimony. *Id*.

Nunez raised his instant ineffective assistance of counsel claim in his state habeas application. Dkt. No. 14-35 at 15, 32, 41-42. The state habeas court found the claim lacked merit. Dkt. No. 14-34 at 17. More specifically, the state habeas court stated:

> with respect to not obtaining the outcry determination in a separate hearing, it was trial counsel's strategic decision to allow the jury to hear all the many conflicting outcry statements in the hope that the jury would decide the only way to reconcile all those statements was to determine that the alleged victims must be lying.

*Id*. The TCCA then denied Nunez's application "without written order on findings of trial court without hearing and on the court's independent review of the record." Dkt. No. 14-24 at 1 (emphasis added).

When a § 2254 petitioner's ineffective assistance of counsel claim has been denied on the merits in state habeas proceedings, federal courts must review his claim under the

"'doubly deferential'" standards of both *Strickland* and § 2254(d).  *Woods*, 578 U.S. 113, 117 (quoting *Cullen*, 563 U.S. 170, 190).  The question then is not "whether defense counsel's performance fell below *Strickland's* standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. 86, 101. Additionally, federal courts consider ineffective assistance of counsel claims mixed questions of law and fact; and, therefore, must analyze them under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1).  *Gregory*, 601 F.3d 347, 351.

The state habeas court's resolution of this claim is supported by the record. Nunez's attorney, Alex Dominguez, states in his affidavit that he and his co-counsel did make arguments before the bench regarding the appropriate outcry witness designation. Dkt. No. 14-34 at 12.[29]  However, after presenting arguments to the Court and opposing counsel, they decided to allow the various outcry witness statements to come in as a matter of strategy.  *Id.*  In their affidavits, both counsel state that, because the outcry witness statements contained inconsistencies, presenting the jury with these inconsistencies would allow the jury to conclude that S.L. and A.G. had lied.  In short, allowing the jury to hear these inconsistencies would help bolster their general defense that children sometimes lie, and their specific defense that S.L and A.G. had lied.  *Id.* at 7, 12.

Nunez argues that it was not sound trial strategy for his counsel to allow the jury to hear different outcry witness statements.  Dkt. No. 11 at 11-12; Dkt. No. 20 at 15-16. Specifically, he states:

> By failing to limit the hearsay testimony, the jury was allowed to hear multiple outcries and intermingling evidence which they easily could have misapplied to one complainant or the other.  For Mr. Dominguez to claim

---

[29] This statement is accurate.  *See* Dkt. No. 14-3 at 6-20.

> that the trial strategy in allowing this was to  allow the jury to "reconcile" that the complaints must be lying is not only presumptuous of him and not supported by the record or any other evidence supplied to the state habeas court.  There is no credible evidence in this case that supports that the jury could have made a determination that the complainants were lying especially through hearsay testimony.

Dkt. No. 11 at 12 (errors in original).

As noted above, this Court may not second-guess the reasonable, informed strategic choices of counsel.  *Mejia*, 906 F.3d 307, 316-19; *Rhoades*, 852 F.3d 422, 434 ("'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'") (quoting *Strickland*, 466 U.S. at 690). Nunez suggests that there were no inconsistencies in the outcry witness statements; therefore, the strategic choice of his counsel was unreasonable.  However, he has not shown this to be the case, nor has he otherwise demonstrated this his counsel's choice fell below an objective standard of reasonableness.  Furthermore, even presuming that he could show that his counsel was ineffective, he has not shown how that ineffectiveness caused him prejudice.  *See e.g., Lyon v. Thaler*, No. 3-10-CV-0899-B-BD, 2011 WL 3647910, at *2–4 (N.D. Tex. June 3, 2011), *report and recommendation adopted*, No. 3-10-CV-0899-B, 2011 WL 3648088 (N.D. Tex. Aug. 16, 2011) (finding § 2254 relief unavailable, despite counsel's failure to obtain a § 38.072 determination, because the petitioner failed to show that his counsel's failure prejudiced him).  Accordingly, Nunez has failed to show: (1) that his counsel provided ineffective assistance by failing to obtain an outcry witness designation; (2) that the state habeas court's application of the *Strickland* standard was unreasonable; or (3) that the state habeas court's resolution of his instant claim was otherwise unreasonable under § 2254(d)(1).  Nunez has not shown an entitlement to relief.  His IAC Claim (D)(7) is without merit and should be denied.

## V.  Conclusion

For all the foregoing reasons, Nunez has not shown an entitlement to § 2254 relief. Considering his claims, individually and collectively, he has failed to show that the state habeas court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

## VI.  Certificate of Appealability

A certificate of appealability shall not issue unless the petitioner/movant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (internal quotations and citations omitted).  Said another way, where claims have been dismissed on the merits, the movant/petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* at 484.  Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

A certificate of appealability should not issue in this case because Nunez has not made a substantial showing of the denial of a constitutional right.

## VII.  Recommendation

It is recommended that the Court: (1) **GRANT** Lumpkin's Motion for Summary Judgment; (2) **DENY** the claims presented in Nunez's Petition and Memorandum in Support; (4) **DIRECT** the Clerk of Court to close this case; and (5) **DECLINE** to issue a certificate of appealability.

## VIII.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** on this **23rd** day of **August, 2022,** at Brownsville, Texas.

Ignacio Torteya, III
United States Magistrate Judge